UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE Y-mAbs THERAPEUTICS, INC. SECURITIES LITIGATION | Civil Action No.: 1:23-cv-00431-AS <br><br> CLASS ACTION |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

COOLEY LLP
Aric H. Wu
Sarah M. Topol
Anne E. Bigler
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
ahwu@cooley.com
stopol@cooley.com
abigler@cooley.com

COOLEY LLP
Koji F. Fukumura (*pro hac vice*)
10265 Science Center Drive
San Diego, CA 92121-1117
Tel: (858) 550-6000
kfukumura@cooley.com

*Attorneys for Defendants Y-mAbs Therapeutics, Inc., Thomas Gad, Claus Juan Møller San Pedro, and Vignesh Rajah*

September 29, 2023

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

TABLE OF ABBREVIATIONS ................................................................................................ iv

INTRODUCTION .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.    The AC Fails To Plead An Actionable Misstatement Or Omission ............................... 2

        A.    Statements Regarding FDA's Refusal To File Letter ........................................... 2

        B.    Statements Regarding The Company's Ability To Address The Issues Raised In FDA's Refusal To File Letter And Resubmit The BLA For Filing ................. 4

        C.    Statements Interpreting Clinical Trial Data ........................................................ 7

        D.    Statements Regarding Prospects For FDA Approval Of Omburtamab ................. 8

    II.    The AC Fails To Adequately Plead Scienter .................................................................. 8

    III.    The AC Fails To Adequately Plead Loss Causation ...................................................... 10

    IV.    Plaintiff's Section 20(a) Claim Against Møller And Gad Should Be Dismissed ......... 10

CONCLUSION ....................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aratana Therapuetics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018)................................................................................8

*In re Bristol-Myers Squibb Co. CVR Sec. Litig.*,
2023 WL 2308151 (S.D.N.Y. Mar. 1, 2023) ....................................................................8

*In re Carter-Wallace, Inc. Sec. Litig.*,
220 F.3d 36 (2d Cir. 2000)................................................................................................6

*In re CRM Holdings, Ltd. Sec. Litig.*,
2012 WL 1646888 (S.D.N.Y. May 10, 2012) ..................................................................8

*In re Delcath Sys., Inc. Sec. Litig.*,
36 F. Supp. 3d 320 (S.D.N.Y. 2014)................................................................................10

*In re Dynavax Sec. Litig.*,
2018 WL 2554472 (N.D. Cal. June 4, 2018) ....................................................................1

*In re EDAP TMS S.A. Sec. Litig.*,
2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015)..................................................................9

*Fort Worth Emps.' Ret. Fund v. Biovail Corp.*,
615 F. Supp. 2d 218 (S.D.N.Y. 2009)..........................................................................9, 10

*In re Gildan Activewear, Inc. Sec. Litig.*,
636 F. Supp. 2d 261 (S.D.N.Y. 2009)................................................................................9

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016)................................................................................7

*In re GPC Biotech AG Sec. Litig.*,
597 F. Supp. 2d 412 (S.D.N.Y. 2009)..............................................................................10

*In re GPC Biotech AG Sec. Litig.*,
2009 WL 752111 (S.D.N.Y. Mar. 12, 2009) ..................................................................10

*Hoey v. Insmed, Inc.*,
2018 WL 902266 (D.N.J. Feb. 15, 2018) ......................................................................5, 9

*Kavanagh v. Zwilling*,
578 F. App'x 24 (2d Cir. 2014) ........................................................................................2

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*In re MELA Scis. Inc., Sec. Litig.*,
    2012 WL 4466604 (S.D.N.Y. Sept. 19, 2012)...........................................................................7

*Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*,
    15 F. Supp. 3d 336 (S.D.N.Y. 2014)......................................................................................10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)................................................................................................................4

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)....................................................................................................9

*Sanders v. AVEO Pharm., Inc.*,
    2015 WL 1276824 (D. Mass. Mar. 20, 2015)..........................................................................7

*In re Sanofi Sec. Litig.*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015)....................................................................................4, 7

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)..................................................................................................1, 4

**Statutes, Regulations & Rules**

15 U.S.C.
    § 78j(b)............................................................................................................. *passim*
    § 78t(a)..................................................................................................................................10

21 C.F.R. § 14.171 ...........................................................................................................................1

Fed. R. Civ. P. 9(b) ..........................................................................................................................5

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| **AC** | Plaintiff's Amended Complaint (Dkt. 38) |
| **BLA** | Biologics License Application |
| **Br.** | Defendants' Memorandum of Law in Support of Motion to Dismiss, dated July 11, 2023 (Dkt. 40) |
| **CGCCR** | Central German Childhood Cancer Registry |
| **CNS** | Central nervous system |
| **Company or Y-mAbs** | Y-mAbs Therapeutics, Inc. |
| **CRL** | Complete Response Letter |
| **Defendants** | Y-mAbs Therapeutics, Inc., Thomas Gad, Claus Juan Møller San Pedro, and Vignesh Rajah |
| **Ex. __** | Exhibit to the Declaration of Sarah M. Topol, dated July 11, 2023 (Dkt. 41) |
| **FDA** | U.S. Food and Drug Administration |
| **LM** | Leptomeninges |
| **ODAC** | Oncologic Drugs Advisory Committee |
| **Omburtamab** | $^{131}$I-omburtamab |
| **Opp.** | Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, dated August 29, 2023 (Dkt. 44) |
| **RTF Letter** | Refusal to File Letter |
| **Plaintiff** | Lead Plaintiff Omar Miramontes |
| **PSLRA** | Private Securities Litigation Reform Act of 1995, as amended |
| **SEC** | U.S. Securities and Exchange Commission |
| **Section 10(b)** | 15 U.S.C. § 78j(b) |
| **Section 20(a)** | 15 U.S.C. § 78t(a) |
| **Study 03-133** | First clinical trial of $^{131}$I-omburtamab |
| **Study 101** | Second clinical trial of $^{131}$I-omburtamab |

**INTRODUCTION**

Plaintiff's opposition only confirms that the Amended Complaint should be dismissed with prejudice. The AC alleges that, even before FDA refused to file Y-mAbs's initial BLA in October 2020, Y-mAbs knew from FDA that the clinical trial data from Study 03-133 and Study 101 was inadequate and would never be sufficient. ¶¶ 79-81, 83-88, 103. As Defendants explained in their opening brief, however, the AC conspicuously omits a key event: in May 2022, FDA accepted Y-mAbs's resubmitted BLA for filing. *See* ¶¶ 148-51 (skipping from May 10, 2022 to August 9, 2022), *with* Ex. 10 (May 31, 2022 press release announcing FDA's acceptance of BLA for filing).

Plaintiff makes no attempt to explain why FDA would have bothered to accept the BLA for filing, grant it priority review, and convene an ODAC meeting in October 2022 to address the adequacy of the BLA data if, as Plaintiff claims, FDA had already concluded that the clinical trial data was insufficient and approval of omburtamab would not be granted. *See* 21 C.F.R. § 14.171 (meetings of advisory committees such as ODAC are convened at the FDA's discretion).

Instead, ignoring that FDA engages with drug product sponsors "in a dialogue … about the sufficiency of various aspects of the clinical trials and that inherent in the nature of a dialogue are differing views,"[1] and relying almost entirely on the "FDA Briefing Document" postdating all the challenged statements and containing "assessments and/or conclusions … written by individual FDA reviewers" that "do not necessarily represent the final position of the individual reviewers" or "the Review Division or Office," AC Ex. A at 1, Plaintiff doubles down that it was "impossible" to provide what the FDA required, and claims that, in January 2022, FDA had concluded that "the inability to audit the CGCCR data would be '*a filing issue*.'" Opp. at 8, 11 (emphasis in original).

---

[1] *Tongue v. Sanofi*, 816 F.3d 199, 211-12 (2d Cir. 2016); *accord In re Dynavax Sec. Litig.*, 2018 WL 2554472, at \*7 (N.D. Cal. June 4, 2018) ("Reasonable investors would expect that the company and the FDA would be engaged in a dialogue about the sufficiency of the clinical trials and that such dialogue inherently would include presentation of contrary views.").

As explained in Defendants' opening brief, however, if FDA had concluded there was a "filing issue," it would not have accepted the BLA for filing in May 2022.  Indeed, in assessing whether to accept a BLA for filing, FDA looks for "filing issues," including "complex significant deficiencies that preclude correction before filing," such as "statistical analyses," "use of a trial design that is inappropriate," and "reliance solely on trials that fail to achieve statistical significance on the primary endpoint or endpoints."  Ex. 17 at 10, 18, 20.

Plaintiff's only response, buried in a footnote, is to ask the Court to disregard the FDA's May 2022 acceptance of the BLA as "not contained in the Complaint" or alternatively to simply infer in Plaintiff's favor that "FDA determined that Y-mAbs had conceded that they could not cure the deficiencies and would try for a 'hail Mary,'" Opp. 19 n.5, notwithstanding that FDA had both accepted the BLA for filing and decided to convene an ODAC meeting, when it simply could have issued another RTF.  That is not the law.  *See Kavanagh v. Zwilling*, 578 F. App'x 24, 24 (2d Cir. 2014) (on a motion to dismiss, a court need "not accept as true … unwarranted inferences").

This is a glaring hole in Plaintiff's story and undermines any plausible, much less cogent, inference of fraud.  For all the reasons herein, the AC should be dismissed with prejudice.

## ARGUMENT

### I.    The AC Fails To Plead An Actionable Misstatement Or Omission

On October 2, 2020, FDA issued an RTF letter.  ¶ 90.  Plaintiff challenges Y-mAbs's statements thereafter for nearly a two-year period (October 5, 2020 to August 9, 2022).  ¶¶ 91-153. As discussed below, Plaintiff has failed to plead an actionable misstatement or omission.

#### A.    Statements Regarding FDA's Refusal To File Letter

On October 5, 2020, Y-mAbs issued a press release announcing its receipt of FDA's RTF letter.  ¶¶ 91-94, 102.  Plaintiff does not dispute that the AC fails to plead any facts contradicting the press release statements that "[n]o additional non-clinical data have been requested," ¶ 92, and

2

that Y-mAbs intended to "request a Type A meeting with the FDA as soon as possible." ¶ 94. *See* Br. at 11-12. On October 6, 2020, Y-mAbs hosted a conference call. ¶¶ 95-101. Plaintiff does not dispute that the "FDA Briefing Document" attached to the AC directly refutes his claim that Møller's description of what FDA requested in the RTF letter was inaccurate. *See* Br. at 12.

Instead of identifying any false statement, Plaintiff attempts to contrive one by mismatching a question and answer during the October 6 call. Plaintiff claims that "when directly asked, '*[a]re these new issues being raised [in the RTF] that hadn't been discussed previously?*' Møller responded unequivocally '*yes, I was very surprised*.'" Opp. 13. That is not what happened. Møller was asked a string of four questions by a BofA Merrill Lynch analyst, the first of which was "Are you surprised by the FDA's determination, given the extent of prior dialogue leading up to the BLA?" Ex. 3 at 5. In response to this first question, Møller responded "Number one, yes, I was very surprised and of course, disappointed." *Id.* Møller then completed his answer as follows: "And the FDA also expressed in their cover letter that they understood that we, of course, w[ere] disappointed, but they also reiterated their willingness to continue working [with] us to swiftly get this rectified. There is no request for additional clinical data that is not already available." *Id.*

The AC is devoid of contemporaneous facts showing that, in October 2020, Møller was not "surprised" and "disappointed" by the RTF letter, ¶ 96, did not think that FDA "want[ed] to work with us on getting this successfully refiled," ¶ 98, did not honestly believe the RTF letter was a "minor setback" and "not a problem," ¶¶ 100-101, or was concerned FDA would find Y-mAbs's responses to the RTF letter requests insufficient, ¶ 100. Moreover, as demonstrated in Defendants' opening brief, AC ¶ 103 erroneously attributes to the pre-RTF letter period FDA communications that did not occur before Y-mAbs's receipt of the RTF letter, including Plaintiff's demonstrably false claim that, between 2017 and 2020, FDA "repeatedly advised Y-mAbs of its concerns that

… no patient in Study 101 demonstrated an unequivocal treatment response that could be definitively attributed to omburtamab." ¶ 103. *See* Br. at 12-13 & n.4. In his opposition, Plaintiff does not dispute these errors in the AC (and makes no attempt to defend ¶ 103).

There is thus no basis for Plaintiff's contention that Defendants "affirmatively misrepresented" what was stated in the RTF letter, Opp. 16-17 n.3, or Plaintiff's contention that Y-mAbs should have disclosed what FDA conveyed in communications "prior to the RTF letter." *Id.*; *see In re Sanofi Sec. Litig.,* 87 F. Supp. 3d 510, 542 (S.D.N.Y. 2015) ("[I]nterim FDA feedback is not material because it does not express a binding agency decision and is subject to change as the FDA and pharmaceutical companies work together to develop viable clinical trials and approvable licensing applications."), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).

**B.**     **Statements Regarding The Company's Ability To Address The Issues Raised In FDA's Refusal To File Letter And Resubmit The BLA For Filing**

In challenging opinion statements regarding Y-mAbs's ability to address the issues raised in the RTF letter, ¶¶ 93, 95, 97, 99, 107, 115, 120, 122, 127, 129, 133, 137-38, 143, 148, Plaintiff purports to rely on an omissions theory. *See* Opp. 16. But it is "no small task" for Plaintiff to plead the falsity of opinion statements via an omissions theory. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189-90, 194 (2015). Because "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts," an opinion statement is not actionable merely because "some fact cutting the other way" is not disclosed. *Id.* at 189-90. Rather, a plaintiff "must identify particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Id.* at 194.

4

Here, Plaintiff argues the challenged opinions were misleading because they failed to disclose that "the FDA had repeatedly warned Y-mAbs as early as 2016 that the CGCCR data was not adequate." Opp. 11. Plaintiff ignores, however, that Y-mAbs repeatedly cautioned investors that Study 03-133, with its "compar[ison] with data from an external cohort comprising data from the [CGCCR]," may "fail to demonstrate comparability to the satisfaction of the FDA." Ex. 8 at 81; *see also* Ex. 5 at 32, 79-80, 94-95, 98; Ex. 1 at 30, 72, 90. Plaintiff does not plead facts showing that, at the time of the challenged opinions, FDA had made its final determination. *See Hoey v. Insmed, Inc.*, 2018 WL 902266, at *14 (D.N.J. Feb. 15, 2018) ("a biopharmaceutical corporation need not share a regulatory agency's response or criticism to a trial and its results if it does not constitute a final determination"). Nor could he. The very purpose of convening ODAC in October 2022 (*i.e.*, after the challenged opinion statements) was to address the adequacy of the data. Ex. 15 at 208:8-13. Plaintiff thus skips forward to ODAC's October 2022 vote and FDA's December 2022 CRL denying approval of the BLA, when he proclaims that "FDA concluded that an adequate comparator ***was*** required and the CGCCR data was not adequate." Opp. 19 n.5. Plaintiff's fraud-by-hindsight pleading does not satisfy Rule 9(b) or PSLRA requirements.

Plaintiff makes the same mistake in challenging forward-looking statements regarding the timing for resubmission of the BLA. Plaintiff does not dispute the statements, ¶¶ 94-95, 99, 107, 120, 127, 133, 142, were identified as forward-looking and accompanied by cautionary statements, *see* Br. at 15-16; instead, Plaintiff skips ahead to ODAC's October 2022 vote and FDA's December 2022 CRL to claim that, dating back to October 2020, Y-mAbs already had "actual knowledge" that FDA had concluded the CGCCR data was inadequate. Opp. 20-21; *id.* at 17-18 (arguing that optimistic statements regarding BLA resubmission, ¶¶ 122, 127, 133, 137, constituted false assurances, rather than inactionable puffery, because Defendants already "knew" FDA conclusion

5

that CGCCR data was inadequate).  That again is impermissible fraud-by-hindsight pleading.[2]

Plaintiff does not dispute that companies "are not required to take a gloomy, fearful, or defeatist view of the future," and that even "misguided optimism … does not support an inference of fraud."  *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 42 (2d Cir. 2000) (cleaned up).  Here, Defendants' optimistic statements were not misguided.  In assessing whether to accept a BLA for filing, FDA looks for "filing issues," such as "complex significant deficiencies that preclude correction before filing."  Ex. 17 at 10; *see also id.* at 18, 20.  Plaintiff contends that FDA conclusively determined in January 2022 that "the inability to audit the CGCCR data would be '*a filing issue*.'"  Opp. 11 (emphasis in original).[3]  But rather than refuse to file the March 2022 BLA, FDA accepted it for filing in May 2022, *compare* ¶¶ 148-51, *with* Ex. 10, and scheduled an ODAC meeting to address the adequacy of the data supporting the BLA.  Ex. 15 at 208:8-13.

Plaintiff speculates that "FDA determined that Y-mAbs had conceded that they could not cure the deficiencies and would try for a 'hail Mary,'" Opp. 19 n.5, but does not, and cannot, explain why FDA would have bothered to accept the BLA for filing and convene an ODAC meeting if FDA had already concluded that the clinical trial data was insufficient.

---

[2] In an attempt to contrive a claim, Plaintiff again resorts to mischaracterizing Defendants' statements.  Plaintiff contends that "[o]n November 6, 2020, Møller proclaimed, "*[w]e have resolved all the issues that [FDA] have requested*," Opp. 14, but omits what Møller stated immediately thereafter: "There are still some issues we need additional clarification on in terms of level of response rates and number of patients [FDA] want to see response rates from.  And [FDA] and us are still discussing it."  Ex. 4 at 12.  Plaintiff also takes issue with Møller's February 26, 2021 statement that SIOPEN included "*more granularity and details*" than CGCCR, but does not explain how that was false; instead, Plaintiff contends that Møller falsely stated that "*FDA seems to be very happy about*" Y-mAbs having "*2 sets of historical controls*."  Opp. 14.  What Moller actually stated was that "FDA seems to be very happy about" SIOPEN agreeing in January 2021 to give Y-mAbs access to its data.  ¶ 117.  That is not "objectively false" because "data on post-CNS was not available."  Opp. 14.  Both can be true; they are not mutually exclusive.

[3] Far from representing that "Y-mAbs would not resubmit the BLA until they 'reach a final agreement with the agency' and 'get a green light,'" Opp. 15, Møller stated "*we hope* to reach a final agreement with the agency on the remaining details before initiating our rolling resubmission" of the BLA, ¶ 115 (emphasis added), and "*we expect* to get a green light," ¶ 129 (emphasis added).  There is no requirement that a company obtain FDA's agreement to, or approval of, the contents of a drug product application before submitting the application.  If the contents are incomplete or deficient, FDA will refuse to file the application, Ex. 17 at 10, 18-20, as it did to Y-mAbs's initial BLA in October 2020.  ¶ 90.

## C.        Statements Interpreting Clinical Trial Data

Plaintiff does not dispute that statements interpreting clinical trial data are "opinions because reasonable persons may disagree over how to analyze data and interpret results." *Sanofi*, 87 F. Supp. 3d at 543 (cleaned up). Instead, Plaintiff again assumes without any factual basis that FDA had already concluded that the CGCCR data was inadequate and argues that "[w]hen reasonable investors are led to believe that regulatory approval is a 'when not if' proposition, … subjective scientific disagreement over the efficacy of the drug should be disclosed." Opp. 20 (quoting *Sanders v. AVEO Pharm., Inc.*, 2015 WL 1276824, at *6 (D. Mass. Mar. 20, 2015)). But, as already discussed, the very purpose of convening ODAC in October 2022 (*i.e.*, after the challenged opinion statements) was to address the adequacy of the data, and Y-mAbs warned investors that FDA approval was not a foregone conclusion, including because Study 03-133, with its "compar[ison] with data from an external cohort comprising data from the [CGCCR]," may "fail to demonstrate comparability to the satisfaction of the FDA." *See supra* at 5; Br. at 19.

Plaintiff does not otherwise dispute that the AC is devoid of contemporaneous facts showing that Defendants did not genuinely believe its opinion statements interpreting clinical trial data, ¶¶ 109, 117, 149, 151-152; that certain of the opinion statements ¶¶ 109, 149, 151, constitute inactionable puffery, *see* Br. at 18; and "[t]hat the FDA … ultimately disagreed with defendants' interpretation of the data does not render their subjective assessments false or misleading." *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 598 (S.D.N.Y. 2016); *In re MELA Scis. Inc., Sec. Litig.*, 2012 WL 4466604, at *1, 13 (S.D.N.Y. Sept. 19, 2012) (even in the wake of an FDA communication conveying "serious concerns about the clinical trial," "Plaintiffs cannot premise a fraud claim upon a mere disagreement with how defendants chose to interpret the results").[4]

---

[4] Plaintiff does not dispute that Rajah's sole challenged statements, ¶ 152, are inactionable. *See* Br. at 17-18 & n.9. Accordingly, Rajah should be dismissed from the action.

7

**D.     Statements Regarding Prospects For FDA Approval Of Omburtamab**

Plaintiff does not dispute that the challenged statements regarding the prospects for FDA approval, ¶¶ 97, 127, 149, 151, were identified as forward-looking and accompanied by cautionary statements, *see* Br. at 18-20; instead, Plaintiff again engages in fraud-by-hindsight pleading to claim that, dating back to October 2020, Y-mAbs already had "actual knowledge" that FDA had concluded the CGCCR data was inadequate.  Opp. 20-21.  Beyond his failure to plead contemporaneous facts in the AC showing that, at the time of the challenged statements, Y-mAbs had actual knowledge FDA would not approve omburtamab, Plaintiff does not dispute that the challenged statements also constitute inactionable puffery.  *See* Br. at 20; *In re Aratana Therapuetics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 757-58 (S.D.N.Y. 2018).

**II.     The AC Fails To Adequately Plead Scienter**

Plaintiff makes no attempt to show that the AC satisfies his burden of pleading particularized facts giving rise to a "strong inference" of fraudulent intent "with respect to each defendant and with respect to each act or omission alleged to [constitute securities fraud]." *In re Bristol-Myers Squibb Co. CVR Sec. Litig.*, 2023 WL 2308151, at *3 (S.D.N.Y. Mar. 1, 2023). Instead, like the AC, Plaintiff's opposition relies on generalized allegations regarding "Defendants" as a group with respect to all of the challenged statements across a nearly two-year period as whole.  Opp. 21-24.  Scienter "cannot be satisfied through group pleading." *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *30 (S.D.N.Y. May 10, 2012).

There are no allegations of stock sales by Møller or Rajah during the putative class period, and Plaintiff makes no attempt to address the myriad deficiencies with his allegations about Gad's stock sales, *compare* Br. at 21-22, *with* Opp. 23-24, including that Gad's last stock sale during the putative class period was made on February 9, 2022, more than seven months before the October 26, 2022 release of the "FDA Briefing Document," rendering "Plaintiff['s] allegations [] empty

8

vessels." *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 271 (S.D.N.Y. 2009). Plaintiff speculates that Defendants perpetrated fraud to maintain the stock price for a secondary offering in February 2021, Opp. 23, but does not (i) explain how or why this purported motive would extend to the rest of the putative class period (*i.e.*, through October 28, 2022); or (ii) allege that "defendants engaged in [the secondary offering] to secure personal gain." *Rombach v. Chang*, 355 F.3d 164, 177 (2d Cir. 2004) (no strong inference based on alleged desire to maintain stock price to complete a corporate acquisition and a secondary offering because "these steps are part of the officers' and directors' financial responsibilities to the Company"); *accord Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 226 (S.D.N.Y. 2009).

Plaintiff is ultimately reduced to asserting: "[Defendants] were aware of FDA's concerns in the RTF and meetings.  This alone is sufficient to allege scienter."  Opp. 22.  To the contrary, as discussed above, (i) the "FDA Briefing Document" attached to the AC directly refutes Plaintiff's claim that Møller's description of the RTF letter was inaccurate; (ii) the AC does not plead facts showing that, at the time of the challenged statements, FDA had made any final determinations; (iii) "a biopharmaceutical corporation need not share a regulatory agency's response or criticism to a trial and its results if it does not constitute a final determination," *Hoey*, 2018 WL 902266, at *14; (iv) FDA accepted the March 2022 BLA for filing in May 2022 and scheduled an ODAC meeting; and (v) the very purpose of convening ODAC in October 2022 (*i.e.*, after the challenged statements) was to address the adequacy of the data Y-mAbs submitted, Ex. 15 at 208:8-13.  The opposing, non-fraudulent inference is far more compelling—*i.e.*, FDA recognized that omburtamab might provide therapeutic relief to the small patient population with CNS/LM relapse and that consideration of different clinical data approaches was warranted given the impracticality of and ethical considerations against employing a placebo arm.  *See In re EDAP TMS S.A. Sec.*

*Litig.*, 2015 WL 5326166 at *3-4, 14 (S.D.N.Y. Sept. 14, 2015) (notwithstanding FDA's "Major Deficiency Letter" and advisory panel's 9-0 vote that existing trial data did not show efficacy, "more compelling inference" was that company sought to satisfy FDA requirements).

### III.   The AC Fails To Adequately Plead Loss Causation

Rather than explain how the FDA Briefing Document specifically corrected any challenged statement, Plaintiff advances straw men—*i.e.*, statements that Defendants never made, such as "the RTF letter contained 'new issues' never previously raised by FDA" and "the SIOPEN database had relevant details that resolved the deficiencies"—and argues that it is sufficient that Y-mAbs stock dropped when the BLA was "denied approval." Opp. 24. "[T]he materialization of a known risk," here, that approval would not be granted if FDA determined the CGCCR data was inadequate, *see* Br. at 19, does not "plausibly allege loss causation."[5]  *Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 358 (S.D.N.Y. 2014); *Fort Worth Emps.' Ret. Fund*, 615 F. Supp. 2d at 229 (stock price drop "caused by the agency's failure to approve the drug—not by any 'corrective' disclosure of some prior untruth").

### IV.   Plaintiff's Section 20(a) Claim Against Møller And Gad Should Be Dismissed

Plaintiff does not dispute that, absent a primary violation under Section 10(b), his Section 20(a) claim fails, and that dismissal is also required because the AC fails to plead facts raising a strong inference that Møller or Gad were culpable participants in a fraud.  *See* Br. at 25.

### CONCLUSION

For all these reasons, the Amended Complaint should be dismissed with prejudice.

---

[5] Far from citing a "legion" of relevant cases, Opp. 24, Plaintiff cites *In re GPC Biotech AG Sec. Litig.*, 597 F. Supp. 2d 412 (S.D.N.Y. 2009), a case that was *vacated*, 2009 WL 752111 (S.D.N.Y. Mar. 12, 2009), and *In re Delcath Sys., Inc. Sec. Litig.*, 36 F. Supp. 3d 320 (S.D.N.Y. 2014), where the defendant disclosed the number of deaths and serious adverse effects of the drug group, but the FDA briefing document revealed there were no deaths and less serious adverse effects in the placebo group.  *Id.* at 326, 331-32.  That is not remotely the situation here, where Y-mAbs expressly warned investors that approval would not be granted if FDA determined the CGCCR data was inadequate. *See* Br. at 19.

Dated:  New York, New York                    COOLEY LLP
        September 29, 2023
                                              /s/ Aric H. Wu
                                              Aric H. Wu
                                              Sarah M. Topol
                                              Anne E. Bigler
                                              55 Hudson Yards
                                              New York, NY 10001
                                              Tel: (212) 479-6000
                                              ahwu@cooley.com
                                              stopol@cooley.com
                                              abigler@cooley.com

                                              Koji Fukumura (*pro hac vice*)
                                              10265 Science Center Dr.
                                              San Diego, CA 92121-1117
                                              (858) 550-6000
                                              kfukumura@cooley.com

                                              *Attorneys for Defendants Y-mAbs Therapeutics, Inc.,*
                                              *Thomas Gad, Claus Juan Møller San Pedro, and*
                                              *Vignesh Rajah*

11