**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE Y-mAbs THERAPEUTICS, INC. SECURITIES LITIGATION | Civil Action No.: 1:23-cv-00431-AS |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................................. 2

III.  ARGUMENT ...................................................................................................................... 2

      A.    The Requested Award of Attorneys' Fees is Reasonable ...................................... 2

            1.    Legal Standards for an Award of Attorneys' Fees Support Approval ........... 2

            2.    The Requested Fee is Fair and Reasonable Under the Percentage-of-
                  Recovery Method and the Second Circuit's Goldberger Factors .............. 3

                  a.    Time and Labor Expended by Plaintiff's Counsel ......................... 4

                  b.    The Risks of the Litigation .............................................................. 6

                  c.    The Magnitude and Complexity of the Litigation ......................... 8

                  d.    The Quality of Lead Counsel's Representation ............................. 8

                  e.    The Requested Fee in Relation to the Settlement ......................... 11

                  f.    Public Policy Considerations ........................................................ 12

            3.    A Lodestar Cross-Check Confirms the Reasonableness of the Fee
                  Request ........................................................................................................ 13

      B.    Reimbursement of Litigation Expenses ................................................................ 17

      C.    The Proposed Award to Lead Plaintiff is Reasonable ......................................... 18

IV.   CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
 77 F.3d 1215 (10th Cir. 1996) ...........................................................................................16

*Aponte v. Comprehensive Health Mgmt., Inc.*,
 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013)...........................................................................5

*Athale v. Sinotech Energy Ltd.*,
 2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013).......................................................................17

*Backman v. Polaroid Corp.*,
 910 F.2d 10 (1st Cir. 1990).................................................................................................16

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
 472 U.S. 299 (1985)..............................................................................................................3

B*erkey Photo, Inc. v. Eastman Kodak Co.*,
 603 F.2d 263 (2d Cir. 1979)................................................................................................16

*Blum v. Stenson*,
 465 U.S. 886 (1984)........................................................................................................3, 11

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980)..........................................................................................................2, 3

*Bozak v. FedEx Ground Package Sys., Inc.*,
 2014 WL 3778211 (D. Conn. July 31, 2014) .......................................................................11

*Burns v. FalconStor Software, Inc.*,
 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ......................................................................9

*Capsolas v. Pasta Res. Inc.*,
 2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) .........................................................................11

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974)............................................................................................6, 10

*City of Providence v. Aeropostale, Inc.*,
 2014 WL 1883494, (S.D.N.Y. May 9, 2014),
 *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)..............................8, 12

*Cornwell v. Credit Suisse Grp.*,
 2011 WL 13263367 (S.D.N.Y. July 20, 2011) ................................................................13, 14

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. Oct. 11, 2011) ........................................................................14

*Eltman v. Grandma Lee's, Inc.*,
   1986 WL 53400 (E.D.N.Y. May 28, 1986) ........................................................................10, 12

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ..........................................................................11

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)................................................................................3, 4, 6, 13

*Hicks v. Morgan Stanley & Co.*,
   2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...........................................................................3

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ................................................................................................16

*In re AOL Time Warner, Inc.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).............................................................................7, 8

*In re Apple Computer Sec. Litig.*,
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ...........................................................................16

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   772 F.3d 125 (2d Cir. 2014)....................................................................................................19

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012).....................................................................................18

*In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS,
   2005 WL 4045741 (E.D. Mo. June 30, 2005) ...........................................................................9

*In re China Sunergy Sec. Litig.*,
   2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...........................................................................9

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014).......................................................................................14

*In re Comverse Tech., Inc. Sec. Litig.*,
   2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...............................................................6, 11, 13

*In re Credit Default Swaps Antitrust Litig.*,
   2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)..........................................................................14

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
   2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016) ...........................................................................10

*In re Deutsche Telekom AG Sec. Litig.*,
  2005 WL 7984326 (S.D.N.Y. June 14, 2005) ..........................................................................14

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
  *aff'd,* 674 F. App'x 37 (2d Cir. 2016).....................................................................................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).................................................................. *passim*

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...............................................................4, 18, 19

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................................6, 8

*In re Ikon Office Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)................................................................................................6

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009)......................................................................................12

*In re KeySpan Corp. Sec. Litig.*,
  2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ...................................................................10, 18

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...............................................................................18, 19

*In re Mylan N.V. Sec. Litig.*,
  666 F. Supp. 3d 266 (S.D.N.Y. 2023),
  *aff'd sub nom. Menorah Mivtachim Ins. Ltd. v. Sheehan*,
  2024 WL 1613907 (2d Cir. Apr. 15, 2024) .............................................................................15

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..........................................................................13

*In re Sterling Foster & Co., Inc., Sec. Litig.*,
  238 F. Supp. 2d 480 (E.D.N.Y. 2002) .....................................................................................18

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................................14

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ...........................................................................................14

*In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM),
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007).................................................................3, 14, 19

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................................3

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)................................................................................15

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    2009 WL 4730185 (D.N.J. Dec. 4, 2009)...........................................................................8

*Landmen Partners, Inc. v. Blackstone Grp., L.P.*,
    2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) .................................................................11

*Maley v. Del. Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................................13

*Missouri v. Jenkins by Agyei*,
    491 U.S. 274 (1989)...................................................................................................11, 14

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ..................................................................11

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
    2012 WL 651640 (S.D.N.Y. Feb. 24, 2012)......................................................................13

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997) ........................................................................................16

*Savoie v. Merchs. Banks*,
    166 F.3d 456 (2d Cir. 1999)................................................................................................4

*Sewell v. Bovis Lend Lease, Inc.*,
    2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)....................................................................13

*State of W. Va. v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970) .....................................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).......................................................................................3, 4, 14

## **Statutes**

15 U.S.C. § 78u-4 ........................................................................................................2, 4, 19

PSLRA ........................................................................................................................ *passim*

## **Rules**

Fed. R. Civ. P. 23....................................................................................................................1

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Counsel submits this memorandum of law in support of its motion for an award of attorneys' fees, reimbursement of expenses, and award to Lead Plaintiff Omar Miramontes.[1]

## I.    INTRODUCTION

Lead Counsel is pleased to present for the Court's approval a Settlement that recovers $19,650,000 for the Settlement Class. Lead Counsel has not received any compensation for this case while litigating, even as they expended significant attorney time and money. They now request that the Court award attorneys' fees of 33.3% of the Settlement fund ($6,543,450) plus interest for reaching this favorable result.

The Settlement provides a substantial, immediate, and guaranteed recovery for Settlement Class Members, a favorable result in light of the substantial risks Plaintiff faced with ongoing litigation, particularly in light of the Court's partial dismissal of the Action on February 5, 2024. ECF No. 47. Even as to the claims that survived, Plaintiff still faced significant obstacles and risks in certifying a class, defeating Defendants' anticipated summary judgment motion, proving his claims at trial, and defending the verdict on appeal. In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability, loss causation, and damages.  The Action would have involved significant expert discovery to establish loss causation and damages. The risks that Lead Counsel would never get paid after spending countless hours of attorney time and significant sums of its own money justify the $6,543,450 award.

Lead Counsel also seek reimbursement of its out-of-pocket litigation expenses incurred in prosecuting this Action, in the amount of $55,464.66 *See* Declaration of Michael J. Wernke

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation of Settlement dated June 26, 2024 ("Stipulation") (ECF No. 58). Emphasis is added and internal citations and quotations are omitted unless otherwise noted.

("Wernke Decl.") ¶¶29-31, Exhibit 2.[2] These expenses were reasonable and necessary to prosecute and resolve the claims against Defendants successfully.

Finally, over the course of this Action, Lead Plaintiff Omar Miramontes has spent significant time leading this action on behalf of the Settlement Class. He requests an award of $5,000, as authorized under the PSLRA to compensate Lead Plaintiff for his time. 15 U.S.C. § 78u-4(a)(4).

Lead Counsel and Plaintiff's work in steering this action to a successful conclusion amply justify the requests they make. The Court should approve attorneys' fees of $6,543,450 plus interest, approve reimbursement of $55,464.66 in expenses, and award Lead Plaintiff Omar Miramontes $5,000.

## II.     STATEMENT OF FACTS

A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in Section II of the Memorandum of Law in Support of Plaintiff's Motion for Final Approval of the Proposed Class Action Settlement, filed concurrently herewith and incorporated by reference herein.

## III.    ARGUMENT

### A.      The Requested Award of Attorneys' Fees is Reasonable

#### 1.       Legal Standards for an Award of Attorneys' Fees Support Approval

The Supreme Court, the Second Circuit, and district courts within this Circuit have all recognized that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that common fund. *See, e.g., Boeing Co. v. Van Gemert*, 444

---

[2] Exhibit 2 is the Declaration of Robert C. Finkel on behalf of Wolf Popper LLP In Support of Class Counsel's Motion For Approval Of Attorneys' Fees And Expenses ("Wolf Popper Decl.").

U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005).

Attorneys' fee awards from common funds both encourage representatives to seek redress for damages caused to an entire class of persons and prevent that class from being unjustly enriched by the representative's success. *See Boeing*, 444 U.S. at 478; *Goldberger*, 209 F.3d at 47. The incentives the common fund doctrine provides are what permits private actions to serve as "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985). Awards of reasonable "attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007); *see also Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("'To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.'").

**2.    The Requested Fee is Fair and Reasonable Under the Percentage-of-Recovery Method and the Second Circuit's Goldberger Factors**

The Supreme Court has consistently held that courts may employ the percentage-of-recovery approach to determine attorneys' fees in common fund cases. *See Blum v. Stenson*, 465 U.S. 886, 900, n.16 (1984). In *Goldberger*, 209 F.3d at 50, the Second Circuit examined the history of the alternative methods for calculating attorneys' fees and expressly approved the percentage-of-recovery method in awarding fees from a common fund. Indeed, "[t]he trend in this Circuit is toward the percentage method" when awarding attorneys' fees in common fund cases. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the percentage method "directly

3

aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.").

The percentage of recovery method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *13 (E.D.N.Y. Sept. 18, 2007).

One of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Lead Counsel developed sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims. *See Wal-Mart*, 396 F.3d at 121 (one of the merits of the percentage method is that it "provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *Savoie v. Merchs. Banks*, 166 F.3d 456, 460-61 (2d Cir. 1999) (the percentage method "removes disincentives to prompt settlement").

In *Goldberger*, the Second Circuit set forth the six factors that courts should consider in determining whether a fee request is reasonable:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

209 F.3d at 50. Each of these factors supports the fee requested here.

### a. Time and Labor Expended by Plaintiffs' Counsel

Lead Counsel Pomerantz LLP ("Pomerantz") as well as Wolf Popper LLP ("Wolf Popper") (together "Plaintiffs' Counsel") have worked diligently to achieve the Settlement, expending more than 2,453.95 hours for an aggregate lodestar of $1,703,987.75. Wernke Decl. ¶¶20-28; Wolf

Popper Decl. ¶5. To litigate the Action, Plaintiffs' Counsel: (1) conducted an initial investigation of the claims in this action and filed the original complaint; (2) continued the investigation after appointment as Lead Counsel to plead a more detailed amended complaint, which required both analyzing public records and conducting interviews with former employees, as well as consulting with loss causation and damages experts; (3) opposed Defendants' motion to dismiss the Amended Complaint; (4) engaged in discovery, including serving and responding to document requests and interrogatories; (5) prepared for briefing the motion for class certification; (6) exchanged, mediation statements, replies and sur-replies to the Parties' mediation statements; and (7) participated in a full-day mediation; (8) documented the Settlement and filed a motion for preliminary approval; and (9) conducted Due-Diligence Discovery provided pursuant to the terms of the Settlement. Wernke Decl. ¶20; Wolf Popper Decl. ¶3.

Moreover, Lead Counsel's work will not end with the filing of the instant Motions or the Court's approval of the Settlement. Lead Counsel will necessarily spend more time and resources drafting and filing the replies in support of its Motions, preparing for and appearing at the Fairness Hearing scheduled for October 28, 2024, assisting Settlement Class Members with their Claim Forms, overseeing the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries. *Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("That Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request."). Lead Counsel will seek no additional compensation for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015), *aff'd,* 674 F. App'x 37 (2d Cir. 2016) ("Considering that the work in this matter is not yet concluded for

Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

The time and labor Plaintiffs' Counsel invested in investigations, motion practice, discovery, mediation and due-diligence discovery support the requested fee.

### b.        The Risks of the Litigation

The requested fee is also reasonable because Lead Counsel obtained a favorable result though it faced substantial risks. Indeed, the Court granted, in part, Defendants' motion to dismiss, finding that a number of the alleged misrepresentations were not actionable. "[T]he risk of success [is] perhaps the foremost factor to be considered" in determining a reasonable fee. *Goldberger*, 209 F.3d at 54. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger,* 209 F.3d 43. In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (quoting *Goldberger*, 209 F.3d at 55).

The courts in the Second Circuit have recognized that "class actions confront even more substantial risks than other forms of litigation." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010). Securities class actions in particular are "notably difficult and notoriously uncertain." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA" and other changes in the law. *In*

6

*re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also In re AOL Time Warner, Inc.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

Further, courts have described as "misplaced" attorneys' confidence that they can predict with any degree of certainty the outcome of litigation. *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970). That court pointed to two instances in which it had disapproved of proposed settlements only for the plaintiffs to recover nothing or less than the settlement the defendants had offered. *Id.* In many cases, attorneys pursued securities class actions for years only to have summary judgment entered against them or win a judgment they could not collect.

This case was no exception. From the outset, Lead Counsel understood it was embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the Action and that funds were available to compensate staff and to cover the expenses the case would require. With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis, as defense counsel are. *See Flag Telecom*, 2010 WL 4537550, at *27.

Despite the many uncertainties regarding the outcome of the case, as detailed more fully in Plaintiffs' memorandum in support of their motion for final approval of the Settlement, including the risks and uncertainties resulting from the Court's partial dismissal of Plaintiff's claims, Lead Counsel undertook this case on a wholly contingent basis. It did so knowing that the litigation

7

could last for years and would require the devotion of a substantial amount of time and litigation expenses. Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee.

### c.    The Magnitude and Complexity of the Litigation

Courts recognize that securities class actions are "notorious[ly] complex[]." *AOL Time Warner*, 2006 WL 903236, at *8; *see also La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (describing securities class actions as "inherently complex"). If the Action had not settled, continued litigation would have included additional motion practice, such as a class certification motion, summary judgment motions, and *Daubert* motions; extensive discovery, including the review of likely hundreds of thousands (if not millions) of pages of internal documents and depositions of fact and expert witnesses; a trial; post-trial motion practice; and mostly likely appeals.

At many junctures, securities class action plaintiffs must prove esoteric concepts to recover on their claims. For example, to prove damages, plaintiffs must hire an expert to combat Defendants' expert in putting a price figure not only on the disclosure of information that was allegedly fraudulently withheld, but also on all other confounding information released at the same time and at other times during the class period. These are not simple tasks.

Accordingly, the magnitude and complexity of the Action support the requested fee. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("the complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### d.    The Quality of Lead Counsel's Representation

The best evidence of the quality of representation Lead Counsel provided is the recovery it achieved. *See, e.g.*, *Glob. Crossing*, 225 F.R.D. at 467 ("The quality of Securities Lead Counsel's

representation is evidenced by the recovery obtained for the [] Class[].”). Here, the $19,650,000 Settlement recovers approximately 9.92% of the $198 million estimated maximum potential damages to investors, a greater proportion of damages than the average case. *See*, *e.g.*, *Burns v. FalconStor Software, Inc.*, 2014 WL 12917621, at *5 (E.D.N.Y. Apr. 11, 2014)  (citing *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005) (noting that there has been an "average 5.5% - 6.2% of estimated losses recovered in securities fraud class [action] settlements since 1995," and concluding that these percentages are "well within the range of possible approval")); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses). Cornerstone Research found that for cases with damages estimated between $150 million and $249 million, between 2014 and 2022 the median recovery was 4.3%, and for 2023 the median recovery was 3.5%.[3] Thus*, the Settlement Amount is two- to three-times greater than these benchmarks*.

Moreover, the positive reaction by Settlement Class Members confirms the quality of Lead Counsel's representation. *See Flag Telecom*, 2010 WL 4537550, at *29 ("numerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."). The Settlement Class overwhelmingly favors the Settlement. To alert potential Settlement Class Members of the Settlement, the Claims Administrator mailed 14,396 copies of the Postcard Notice to potential class members, posted the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and

---

[3] Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis;* Available at https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf. (Last viewed June 11, 2024). As footnote 4 of the Cornerstone study explains, Cornerstone's study utilize a "simplified tiered damages" approach that varies from a case-specific analysis, and may understate the recovery rate.

Settlement Fairness Hearing ("Long Notice") and Proof of Claim and Release Form on the Claims Administrator's website along with a link for online claim filing and a list of important deadlines, and published the Publication Notice of Pendency and Proposed Settlement of Class Action ("Publication Notice") on *Globe Newswire*. Wernke Decl., Exhibit 1 (Declaration of Sarah Evans Concerning: (A) Mailing of The Postcard Notice; (B) Publication of The Publication Notice; and (C) Report on Requests for Exclusion And Objections ("Evans Decl.")) ¶¶2-12. Each of these notices told Settlement Class Members how they could exclude themselves from the Settlement or object to any part thereof. As of this filing, the Claims Administrator and Lead Counsel have received zero requests for exclusion and zero objections to the Settlement or Lead Counsel's requests herein. Evans Decl. ¶¶13-14; Wernke Decl. ¶8.

The standing and prior experience of Lead Counsel is also relevant in determining fair compensation. *See, e.g.*, *Grinnell*, 495 F.2d at 470; *Eltman v. Grandma Lee's, Inc.*, 1986 WL 53400, at *4 (E.D.N.Y. May 28, 1986). Here, Plaintiff and the Settlement Class are represented by Pomerantz as Lead Counsel. As the firm résumé demonstrates, Lead Counsel has extensive experience in the specialized field of shareholder securities litigation. Wernke Decl., Ex. 5. *See also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2016 WL 5867497, at *5-6 (S.D.N.Y. Oct. 4, 2016) (finding Pomerantz "qualified to serve as lead counsel" because it "possess[ed] significant experience in the area of securities litigation and securities fraud class actions"). Lead Counsel leveraged its experience and resources to assess the merits and value of the case and negotiate the Settlement.

The quality and vigor of opposing counsel is also important in evaluating the services rendered and challenges overcome by Lead Counsel. *See, e.g.*, *In re KeySpan Corp. Sec. Litig.*, 2005 WL 3093399, at *12 (E.D.N.Y. Sept. 30, 2005). Here, Defendants were represented by

10

Cooley LLP, a capable and respected law firm that vigorously represented the interests of its clients throughout this Action. That Lead Counsel achieved the Settlement while opposed by formidable attorneys further justifies the fee they request.

### e.    The Requested Fee in Relation to the Settlement

A fee should approximate what counsel would receive when bargaining in the marketplace. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). In the marketplace, the customary fee arrangement in individual contingent-fee cases is between 30% and 40% of the recovery. *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at *3. The fee request of 33.3% of the Settlement Fund, or $6,543,350, is consistent with the percentages that courts within the Second Circuit have awarded in similar common fund settlements. *See, e.g., Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) ("Class counsel's request for one third of the Fund is reasonable and consistent with the norms of class litigation in this circuit"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (fee equal to one-third of the settlement fund is reasonable and "consistent with the norms of class litigation in this circuit"); *Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at * 7 (D. Conn. July 31, 2014) ("The one-third amount that plaintiffs request is typical of awards in this Circuit."). One-third awards are common in the Second Circuit even in much larger cases. *See, e.g., Landmen Partners, Inc. v. Blackstone Grp., L.P.*, 2013 WL

11

11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding 33.33% of $85 million recovery, plus expenses); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.33% of $586 million recovery).

Under the percentage-of-recovery approach, the attorneys' fees requested by Lead Counsel are fair and reasonable for litigation of this kind and are supported by previous awards made by courts in this Circuit.

### f.    Public Policy Considerations

Private lawsuits further the objective of the federal securities laws to protect investors and consumers against deceptive practices. *Eltman*, 1986 WL 53400, at *4; *Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook."). Those lawsuits require competent counsel to prosecute them. *Eltman*, 1986 WL 53400, at *4. Competent counsel will only take on the lawsuits if they can expect reasonable and adequate compensation for their services where they achieve results. "To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." *Id.*; *see also City of Providence*, 2014 WL 1883494, at *18.

The integrity of the markets depends on companies complying with the federal securities laws. Courts must ensure competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner are available to the markets. Public policy thus supports the award of the attorneys' fees requested here.

12

### 3.    A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit permits courts to "cross-check" the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50. In cases like this, fees representing multiples of lodestar are regularly awarded to reflect the quality of the result, the contingency-fee risk, and other relevant factors. *See, e.g., Flag Telecom*, 2010 WL 4537550, at *26 ("'Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.'"); *Comverse*, 2010 WL 2653354, at *5 ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

"In complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *16 (S.D.N.Y. July 21, 2020) (collecting cases). *See also Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (in complex contingent litigation, "[c]ourts commonly award lodestar multipliers between two and six"). Even higher multipliers have been awarded, particularly where, as here, "Class Counsel were able to use their considerable expertise in the type of claims asserted in th[e] action to achieve an excellent result for the Class in a highly efficient manner at an early stage of litigation." *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012). *See Maley v. Del. Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding that a multiplier of 4.65 is "well within the range awarded by courts in this Circuit and courts throughout the country" in securities cases); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 20,

13

2011) (4.7 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326, at \*4 (S.D.N.Y. June 14, 2005) (3.97 multiplier)

Here, if the Court decides to consider it, a lodestar cross-check would support the requested fee. Plaintiffs' Counsel devoted 2,453.95 hours of attorney and staff time in prosecuting this Action, and its lodestar – derived by multiplying the hours each person worked by their current hourly rates – is $1,703,987.75[4] *See* Wernke Decl., ¶¶20-22. The requested fee of 33.3% of the Settlement Amount represents a multiplier of 3.8 of lodestar. *Id.*

The multiplier here falls within the range of multipliers found reasonable for cross-check purposes by courts in this Circuit and is fully justified given the effort required, the risks faced and overcome, and the results achieved. *See, e.g., See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at \*17 (S.D.N.Y. Apr. 26, 2016) (approving a lodestar multiple of "just over 6"); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (lodestar multiplier of 5 found "not unreasonable"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at \*2 (S.D.N.Y. July 20, 2011) (4.7 multiplier); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706-RO, ECF 107 at 5 (¶9(f)) (S.D.N.Y. July 17, 2007) (awarding "a reasonable multiplier of 10.26"); *Davis v. J.P.*

---

[4] The Supreme Court and courts in this Circuit have long approved the use of current hourly rates to calculate lodestar as a means of compensating for the delay in receiving payment that is inherent in class actions, inflationary losses, and the loss of access to legal and monetary capital that could otherwise have been employed had class counsel been paid on a current basis during the pendency of the litigation. See *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Veeco*, 2007 WL 4115808, at \*9; Jenkins, 491 U.S. at 284.

14

*Morgan Chase & Co*., 827 F. Supp. 2d 172, 185 (W.D.N.Y. Oct. 11, 2011) (multiplier of 5.3 was "not atypical" in similar cases).

The reasonableness of the lodestar multiplier is further confirmed upon examining recent fee awards from this District. *See, e.g., In Re Wells Fargo & Company Securities Litigation*, No. 1:20-cv-04494, ECF 206 at 2 (S.D.N.Y. Sep. 8, 2023) (awarding fees representing a multiplier of 3.8 as referenced in the fee brief at ECF 189 at 21); *City of St. Clair Shores Police and Fire Retirement System v. Credit Suisse Group AG*, No. 1:21-cv-03385, ECF No. 94 at 1 (S.D.N.Y. May 11, 2023) (awarding fees representing a multiplier of 5.6 as referenced in the fee brief at ECF 79 at 29); *In re Luckin Coffee Inc. Securities Litigation*, No. 1:20-cv-01293, ECF 338 at 2-3 (S.D.N.Y. Jul. 22, 2022) (awarding fees with a lodestar multiplier of 4.6); *In re BRF S.A. Securities Litigation*, No. 1:18-cv-02213, ECF 181 at 16-19 (S.D.N.Y. Nov. 2, 2020) (awarding $10 million in fees with a lodestar multiplier of 5.57)

The multiplier is amply supported by the outstanding nature of the recovery as well as the significant risks Lead Counsel faced in pursuing this complex securities litigation on a contingency basis. The risk of no recovery in cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g., In re Mylan N.V. Sec. Litig.*, 666 F. Supp. 3d 266, 328 (S.D.N.Y. 2023) (granting summary judgment after over six years of litigation), *aff'd sub nom. Menorah Mivtachim Ins. Ltd. v. Sheehan*, 2024 WL 1613907 (2d Cir. Apr. 15, 2024). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005). Even plaintiffs who get past summary judgment and succeed at trial may

15

find their judgment overturned on appeal or on a post-trial motion.[5] Moreover, even when cases

settle, attorneys often do not recover the value of their time expended on behalf of the class. A

survey by Lead Counsel of the 92 most recent securities class action settlements in this District

revealed that 40 of the settlements were submitted with a ***negative*** lodestar multiplier.

Here, Lead Counsel's reputation as experience counsel in complex securities cases

facilitated Lead Counsel's ability to not only achieve an excellent result for the Settlement Class

but also do so relatively early in the case so as to not diminish or delay the Settlement Class's

recovery. Such diligence should be rewarded, not penalized for such efficiency. As Judge Castel

recently observed:

> I think it's very important from a public policy standpoint, from the interests of class members, the public, and the administration of justice, that a plaintiff's counsel not be penalized because their lodestar is perhaps lower than other people's lodestars because they did not take the case through the motion practice, through the discovery, etc. It would really not be a very difficult task for a plaintiff's counsel to just prolong the process to run up a lodestar, which would serve no useful purpose other than to justify fees and would impose burdens on other parties. So I do not believe the plaintiffs should, in any way, be penalized for the multiple of the lodestar on the facts of this particular case.

---

[5] *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc*., 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law on the basis of loss causation following a jury verdict partially in plaintiffs' favor); *Robbins v. Koger Props*., 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig*., 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp*., 910 F.2d 10, 18 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment notwithstanding the verdict was denied, on appeal the judgment was reversed and the case was dismissed after 11 years of litigation); B*erkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial).

*In re BRF S.A. Securities Litigation*, No. 1:18-cv-02213, ECF 181 at 17-18 (S.D.N.Y. Nov. 2, 2020) (awarding $10 million in fees with a lodestar multiplier of 5.57). *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *9 (S.D.N.Y. Sept. 4, 2013) (awarding fee that amounts to 5.65 multiplier, noting that counsel "should be rewarded for having reached a substantial and beneficial result prior to the Court ruling on a motion to dismiss").

Thus, the multiplier is within the acceptable range awarded in cases of this type.

The hourly rates used by Lead Counsel to arrive at the lodestar calculation are the firm's current, customary rates. Wernke Decl. ¶25; Wolf Popper Decl. ¶5. Courts in this Circuit have approved Lead Counsel's requests for attorneys' fees based on the same or similar rates as those submitted here. *See, e.g., In re Jumia Techs. S.A. Sec. Litig.*, Case No. 1:19-cv-04397-PKC (S.D.N.Y. Mar. 24, 2021) (ECF No. 128); *Pirnik v. Fiat Chrysler Automobiles N.V.*, No. 15-cv-07199-JMF (S.D.N.Y. Sept. 5, 2019) (ECF No. 369). Lead Counsel's rates are also reasonable in comparison to defense counsel's rates. *See, e.g.*, Sixth Interim Application of Cooley LLP at 4-6, *In re Mallinckrodt PLC*, No. 20-125222 (JTD) (Bankr. D. Decl. May 17, 2022), ECF No. 7392 (Wernke Decl. Ex. 4) (a fee application in a bankruptcy matter for the first quarter of 2022 included hourly rates of $1,180 to $1,590 for Cooley's partners; $1,165 to $1,175 for special counsel; $720 to $1,155 for associates; and $300 to $380 for paralegals).

Thus, the time and effort Plaintiffs' Counsel have devoted to this case to obtain the $19,650,000 recovery for the Settlement Class confirms that the requested fee is reasonable, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar.

## B. Reimbursement of Litigation Expenses

In addition to Lead Counsel's request for a fee of 33.3% of the net Settlement Fund, Lead Counsel seeks reimbursement of $55,464.66 in litigation costs and expenses incurred by Plaintiffs' Counsel in connection with the prosecution of the Action. "Courts routinely grant the expense

requests of class counsel." *Gilat*, 2007 WL 2743675, at *18 (quoting *KeySpan*, 2005 WL 3093399, at *18); *see also In re Sterling Foster & Co., Inc., Sec. Litig.*, 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) (awarding reimbursement of $100,000 in litigation expenses).

Plaintiffs' Counsel incurred $55,464.66 in unreimbursed expenses to prosecute this action, which is significantly less than the $200,000 amount described in the Long Notice, Publication Notice, and Postcard Notice. Wernke Decl. ¶30; Wolf Popper Decl. ¶8. Substantial expenses included the (1) costs of hiring an experienced mediator, (2) costs of experts retained to analyze class certification, loss causation, damages, and the Plan of Allocation, as well as several additional costs like (3) investigator fees (4) PSLRA press releases and newswires, (5) online legal research fees, (6) court filing fees, and (7) printing and postage fees. *Id*. The expenses incurred are reflected in Plaintiffs' Counsel' books and records and were reasonable and necessary to achieve the Settlement. Wernke Decl. ¶¶30-31; Wolf Popper Decl. ¶8; *see In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010) (reimbursing "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses"); *see also In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (reimbursing over $1 million in expert expenses to plaintiff's counsel).

There have been no objections to the expense reimbursement request, and the actual amount requested is below the $200,000 limit disclosed in the Notice. The Court should grant Lead Counsel's request for reimbursement of reasonable and necessary litigation expenses.

## C.    The Proposed Award to Lead Plaintiff is Reasonable

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of

18

the class." 15 U.S.C. § 78u-4(a)(4). Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Gilat*, 2007 WL 2743675, at \*19; *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000). "PSLRA awards are not limited to lost wages or other documented expenses … [and] may be awarded in recognition of, for example, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation." *MetLife*, 689 F. Supp. 2d at 370.

Lead Plaintiff Omar Miramontes has devoted a significant amount time to this case, spending time monitoring news on the company, reviewing the pleadings, and communicating and corresponding with Lead Counsel regarding the litigation and settlement. Wernke Decl., Ex. 3 (Declaration of Lead Plaintiff Omar Miramontes). Therefore, he requests an award of $5,000 to reimburse him for the time he spent on this case. Such an award is "reasonable and appropriate relative to the … overall settlement." *MetLife*, 689 F. Supp. 2d at 370 (collecting cases); *Veeco*, 2007 WL 4115808, at \*12 (awarding lead plaintiff approximately $15,900 for time spent supervising litigation and characterizing such awards as "routine" in this Circuit); *Giant Interactive Grp.*, 279 F.R.D. at 166 (awarding $10,000 for lost time).

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Lead Counsel's application for an award of attorneys' fees, reimbursement of reasonable expenses, and award to Lead Plaintiff Omar Miramontes for services rendered to the Settlement Class.

19

Dated:  October 7, 2024

Respectfully submitted,

/s/   *Michael J. Wernke*
Jeremy A. Lieberman
Michael J. Wernke
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
         mjwernke@pomlaw.com

*Counsel for Omar Miramontes and*
*Lead Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Additional Counsel*

20

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: */s/ Michael J. Wernke*
Michael J. Wernke

21