**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE Y-mAbs THERAPEUTICS, INC. SECURITIES LITIGATION | Civil Action No.: 1:23-cv-00431-AS |

<u>**DECLARATION OF MICHAEL J. WERNKE**</u>

**EXHIBIT LIST**

| Ex. # | Description |
|---|---|
| 1 | Declaration of Sarah Evans Concerning: (A) Mailing of The Postcard Notice; (B) Publication of The Publication Notice; and (C) (F) Report On Requests For Exclusion And Objections ("Evans Decl.") |
| 2 | Declaration of Robert C. Finkel In Support of Class Counsel's Motion For Approval of Attorneys' Fees And Expenses ("Wolf Popper Decl.") |
| 3 | Declaration of Omar Miramontes ("Miramontes Decl.") |
| 4 | Sixth Interim Application of Cooley LLP at 4-6, *In re Mallinckrodt PLC*, No. 20-125222 (JTD) (Bankr. D. Decl. May 17, 2022), ECF No. 7392 |
| 5 | Firm Biography of Pomerantz LLP |

2

I, Michael J. Wernke, declare and state, under penalty of perjury, that the following is true and correct to the best of my knowledge, information, and belief:[1]

1.      I am a partner in Pomerantz LLP ("Pomerantz"), the Court-appointed Lead Counsel in this Action and counsel for Lead Plaintiff Omar Miramontes ("Plaintiff"). I have been actively involved in this litigation, and thus have personal knowledge of all material matters related to this Action. I submit this declaration in support of Lead Plaintiff's Motions for: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff, both filed concurrently herewith.

2.      The purpose of this Declaration is to set forth the nature of the investigation, litigation, legal briefing and negotiations that led to the Settlement. In my view, this Declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by this Court, as well as why Lead Counsel's fees and expense request and Award to Lead Plaintiff are reasonable and should be approved by the Court.

## I.    THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

3.      The "Summary of The Litigation and The Settlement" section of Memorandum of Law in Support of Plaintiff's Motion for Final Approval of the Proposed Class Action Settlement, filed concurrently herewith, accurately provides highlights of the prosecution of the Action.

4.      The Settlement is the result of extensive arm's-length settlement negotiations among experienced counsel. On May 20, 2024, counsel for Lead Plaintiff and Defendants participated in a full-day mediation before Michelle Yoshida of Phillips ADR Enterprises. In advance of that session, the Parties exchanged detailed, confidential opening mediation statements addressing liability and damages, and the Parties continued to serve reply and sur-reply mediation

---

[1] Unless otherwise indicated, all capitalized terms shall have the meanings as set forth in the Stipulation of Settlement ("Stipulation"), dated June 24, 2024.   ECF No. 58.

3

statements up until the morning of the mediation, all of which were provided to the mediator.  No settlement was reached at the mediation. After further negotiations, Ms. Yoshida issued a mediator's recommendation that the Action settle for $19,650,000 in cash, which was accepted by each Party on May 31, 2024, and, after additional negotiations, the Parties executed a Memorandum of Understanding ("MOU") on June 5, 2024.

5.      The Stipulation provides for a cash payment by Defendants of $19,650,000 into an interest-bearing escrow account in exchange for the release of all claims asserted Plaintiff against Defendants, and completely resolves this Action.

6.      The Court preliminarily approved the Stipulation by its Order Preliminarily Approving Settlement and Providing for Notice, dated July 1, 2024 ("Preliminary Approval Order").  ECF No. 59.

7.      All conditions of the Preliminary Approval Order are met. Plaintiff caused the Postcard Notice to be issued and the publication notice to be published as demonstrated by the Declaration of Sarah Evans Concerning: (A) Mailing Of The Postcard Notice; (B) Publication Of The Publication Notice; and (C) (F) Report On Requests For Exclusion And Objections ("Evans Decl."), attached hereto as Exhibit 1.

8.      Even though the Postcard Notice was sent to 14,396 potential Class Members, brokers, and other nominees, the Notice and Claim Form, the Court's Preliminary Approval Order, and the Stipulation were posted online at www.strategicclaims.net/y-mabs, and the Publication Notice of Pendency and Proposed Settlement of Class Action ("Publication Notice") was posted electronically on *Globe Newswire*, no Settlement Class Members has objected to the Settlement and no Settlement Class Members has requested exclusion. *See* Evans Decl., ¶¶2-14.

4

9.      The $19,650.000 settlement represents 9.92% of the $198 million estimated maximum potential damages to investors.   This is an excellent result. This estimate also assumes that Plaintiff prevails on every claim and defeat all of Defendants' defenses. Defendants disagreed with this estimation of damages. Defendants contended that even if Plaintiff could establish liability and damages, the maximum damages would be far less than Plaintiff claims and, that if the matter went to trial and Plaintiff prevailed, they would only obtain a fraction of their purported maximum damages. This recovery therefore represents an excellent result and is far above the range of typical securities class action settlements.

10.     In light of, *inter alia*, the discovery taken and Lead Counsel's thorough factual and legal investigations, including Due-Diligence Discovery pursuant to the Settlement Agreement, and my comprehensive understanding of the law and legal experience and that of my colleagues, I believe the Settlement is not only fair, reasonable and adequate, but that it represents a favorable result for the Settlement Class considering, *inter alia*, the risks of litigation and the likelihood of potential outcomes that could result if Plaintiff were to pursue his claims to judgment, as discussed in greater detail in the memoranda in support of the Motions. I believe that all relief requested in the pending Motions is fair and reasonable, and that the Motions should be approved.

11.     The Plan of Allocation is fair, reasonable and adequate as it was formulated with the aid of a damages consultant and distributes the Settlement Fund *pro-rata* to class members pursuant to the principles of *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). Only those shareholders who purchased and continued to hold after a corrective disclosure during the Class Period are compensated. Shareholders are allocated a recognized per share loss of the stock drop based on the amount of such drop. Thus, each shareholder is treated fairly and compensated *pro-rata* based on the loss caused by the alleged misconduct.

5

## II.    THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE AND EXPENSES INCURRED WERE NECESSARY TO LITIGATE THIS ACTION

12.    The percentage of recovery method for compensating attorneys in common fund cases is preferred and appropriate. First, it is consistent with the Second Circuit case law, as set forth in the accompanying Memorandum of Law in Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff ("Fee Brief"). Second, it is consistent with practices of the private marketplace where contingency attorneys are customarily compensated on a percentage of the recovery method. Third, it provides Lead Counsel with a strong incentive to achieve a maximum possible recovery in a reasonable amount of time. Fourth, use of the percentage method decreases the burden imposed upon the Court by the "lodestar" method and assures that Settlement Class Members do not experience undue delay in receiving their share of the settlement.

13.    Lead Counsel has represented the Settlement Class on a wholly contingent basis, not receiving any payment for its service or the expenses incurred in prosecuting this Action against Defendants and negotiating the Settlement. Throughout this time, Lead Counsel's dedication to recovering a favorable result for the Settlement Class has been expensive and challenging.

14.    The Notice informed Settlement Class Members that Lead Counsel would apply for attorneys' fees in an amount not to exceed 33.4% of the Settlement Fund, plus reimbursement of expenses up to $200,000, and award to Lead Plaintiff up to $10,000.

15.    Lead Counsel requests that the Court award a fee of 33.3% of the Settlement Fund, or $6,543,450, plus accrued interest. As discussed in the Fee Brief filed concurrently herewith, the requested fee is within the range of reasonable fees awarded in common-fund cases.

6

16.    In addition, in light of factors, including the excellent result achieved for the Settlement Class, the skill required, the quality of work performed, and the risk of pursuing claims on a contingency basis, a 33.3% fee is justified and should be approved.

17.    From its inception, Lead Counsel has aggressively litigated this Action. Lead Counsel's experience in securities class action litigation allowed it to identify complex issues involved in this action and to formulate strategies to effectively and efficiently prosecute a litigation of this complexity. Additionally, Lead Counsel submits that its reputation as attorneys able and willing to see a meritorious case through trial and appeals assisted in the Settlement negotiations. As set forth in detail in the firm resume, attached as Exhibit 5, Lead Counsel is a nationally-recognized class-action firm with extensive experience litigating and negotiating settlements in complex securities class actions.

18.    The quality of legal services performed by Class Counsel in obtaining the Settlement should also be evaluated in light of the quality of the opposition. Defendants were represented by very able and zealous counsel, Cooley LLP, which possesses significant experience in complex securities litigation and is a highly respected and reputable firm. Defendants' counsel spared no effort in the defense of its clients. In the face of this opposition Lead Counsel were nonetheless able to develop a case that was sufficiently strong to settle the Action on terms that were favorable to the Class.

19.    Lead Plaintiff and Lead Counsel faced significant risks in pursuing this action. In fact, this was not an action where any recovery was assured. Adding to these risks, Lead Counsel has received no compensation and incurred significant out-of-pocket expenses during the time the action has been pending. Lead Counse's fees are totally contingent and dependent upon a

7

successful result and an award by this Court. Lead Counsel respectfully submits that the outstanding Settlement was primarily the result of their persistence, hard work, and skill.

20.     Collectively, Pomerantz and Wolf Popper LLP ("Wolf Popper") (together "Plaintiffs' Counsel") have expended approximately 2,453.95 hours in the investigation and prosecution of the Action, which Plaintiffs' Counsel submit were reasonable and reflect their commitment to aggressively pursuing compensation for the Settlement Class. There was no overlap in the work conducted by the firms. To litigate the Action, Plaintiffs' Counsel: (1) conducted an initial investigation of the claims in this action and filed the original complaint; (2) continued the investigation after appointment as Lead Counsel to plead a more detailed amended complaint, which required both analyzing public records and conducting interviews with former employees, as well as consulting with loss causation and damages experts; (3) opposed Defendants' motion to dismiss the Amended Complaint; (4) engaged in discovery, including serving and responding to document requests and interrogatories; (5) prepared for briefing the motion for class certification; (6) exchanged, mediation statements, replies and sur-replies to the Parties' mediation statements; and (7) participated in a full-day mediation; (8) documented the Settlement and filed a motion for preliminary approval; and (9) conducted Due-Diligence Discovery provided pursuant to the terms of the Settlement.

21.     As set forth directly below and in the Declaration of Robert C. Finkel, attached hereto as Exhibit 2, counsel has incurred the following fees and expenses in prosecuting the Action on a fully contingent basis:

| **Firm** | **Hours** | **Lodestar** | **Expenses** |
|---|---|---|---|
| Pomerantz LLP | 2,335.25 | $1,617,336.75 | $54,080.26 |
| Wolf Popper LLP | 118.70 | $86,651.00 | $1,384.40 |
| **Total:** | **2,453.95** | **$1,703,987.75** | **$55,464.66** |

8

22.     Applying the normal hourly rates of Plaintiffs' Counsel to the hours expended in the Action yields a lodestar amount of $1,703,987.75, and a lodestar multiplier of 3.8.

23.     Pomerantz has expended approximately 2,335.25 hours in the investigation and prosecution of the Action, which Lead Counsel submits were reasonable and reflect its commitment to aggressively pursuing compensation for the Settlement Class.

24.     The information in this declaration regarding Lead Counsel's time was prepared from daily time records regularly prepared and maintained in the ordinary course of business.   I am the partner who oversaw the work conducted by my firm in this Action. I reviewed the daily time records with an effort to confirm their accuracy. Time expended in drafting the application for fees and expenses has not been included in this report. As a result of this review and adjustments, I believe that the time reflected in the firm's lodestar calculation is reasonable in amount and was necessary for the effective and efficient prosecution and resolution of the litigation.

25.     Applying the normal hourly rates of Lead Counsel to the hours expended in the Action yields a lodestar amount of $1,617,336.75.   The lodestar calculation based on my firm's current billing rates.   For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates of such personnel in his or her final year of employment by my firm.

26.     The hourly rates are the same as, or comparable to, the rates submitted by my firm for lodestar cross-checks in other securities class action litigation for fee applications that have been granted by courts nationwide. *See, e.g., In re Jumia Techs. S.A. Sec. Litig.*, Case No. 1:19-cv-04397-PKC (S.D.N.Y. Mar. 24, 2021) (ECF No. 128); *Pirnik v. Fiat Chrysler Automobiles N.V.*, No. 15-cv-07199-JMF (S.D.N.Y. Sept. 5, 2019) (ECF No. 369); *Strougo v. Barclays PLC,* No. 1:14-cv-05797 (S.D.N.Y. Apr. 12, 2019) (ECF No. 144-3 at 55).

9

27. A summary of the calculation of Lead Counsel's lodestar is set forth below.

**POMERANTZ LLP TIME REPORT**
**Inception through October 6, 2024**

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Jeremy Lieberman | 35.60 | $1,325 | $47,170.00 |
| Michael Wernke | 717.70 | $1,100 | $789,470.00 |
| Alex Hood | 0.80 | $975 | $780.00 |
| **Associates / Attorneys** | | | |
| Jay D. Dean | 177.00 | $715 | $126,555.00 |
| Thomas Pryzyblowski | 3.20 | $600 | $1,920.00 |
| Thomas Garrette | 477.25 | $465 | $221,921.25 |
| Chirag Patel | 445.90 | $465 | $207,343.50 |
| Carmen Fernandez | 201.00 | $465 | $93,465.00 |
| Obafemi Alaka | 140.80 | $465 | $65,472.00 |
| Hanna Furst | 136.00 | $465 | $63,240.00 |
| **TOTAL LODESTAR** | **2,335.25** | | **$1,617,336.75** |

28.     Plaintiffs' Counsel collectively worked 2,453.95 hours on the litigation. Plaintiffs' Counsel's total lodestar is $1,703,987.75. The requested fee of thirty percent (33.3%) of the Settlement Fund is $6,543,450 which represents a multiplier of 3.8 to Plaintiffs' Counsel's lodestar. I believe that this multiplier is fair and reasonable based on the risks of the litigation, the quality of the representation and the results obtained. As discussed in further detail in the Fee Brief, the fee multiplier is within the range of the fee multipliers typically awarded in comparable securities class actions involving significant contingency fee risk in the Second Circuit.

*The Litigation Expense Application*

29.     Plaintiffs' Counsel collectively incurred $55,464.66 of unreimbursed expenses to prosecute this Action. *See also* Ex. 2, Wolf Popper Decl., at ¶8.

30.     Lead Counsel incurred $54,080.26 of unreimbursed expenses to prosecute this Action. The expenses incurred in this Action are reflected on the books and records of my firm.

10

These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred. This amount is less than the $200,000 amount set forth in the Notice.   Substantial expenses included: (1) retention of experts in connection with class certification and damages; (2) investigator fees incurred in connection with the filing of the amended complaint; (3) mediator fees; (4) online legal research; (5) PSLRA newswires and press releases; (6) travel expenses; and (7) photocopying and local travel. All of the expenses incurred were necessary to prosecute this action effectively.

31.    A breakdown of the unreimbursed expenses my firm has incurred is set forth below:

**POMERANTZ LLP EXPENSE REPORT**

| CATEGORY | AMOUNT |
|---|---|
| PSLRA Press Releases and Newswires | $4,100.00 |
| On-Line Legal Research* | $452.37 |
| Postage, Express Mail, Clerical, Photocopying & Misc. | $291.41 |
| Travel, Lodging and Meals | $921.39 |
| Investigator Fees | $2,720.75 |
| Notice of Pendency of Class Action | $25,000.00 |
| Experts and Consultants<br>- Fideres USA Inc. ($20,349.00)<br>- Stanford Consulting ($13,188.00) | $ 33,537.00 |
| Mediation Fees | $12,343.75 |
| | |
| **TOTAL EXPENSES:** | **$54,080.26** |

* The charges reflected for on-line research are for out-of-pocket payments to the vendors for research done in connection with this litigation.   Online research is billed to each case based on actual time usage at a set charge by the vendor.

**III.    AN AWARD TO LEAD PLAINTIFF IS WARRANTED**

11

32.    The Notice advised Settlement Class Members that Lead Plaintiff would seek an award of no greater than $10,000.

33.    Lead Plaintiff seeks an award in the amount $5,000. This award is justified in light of its efforts and lost time in this Action.   Plaintiff (a) regularly communicated and met with Lead Counsel regarding the posture and progress of the case, (b) reviewed filings, (c) reviewed and/or discussed all significant decisions in the Action; (d) produced information and documents in response to Defendants' discovery requests; (e) conferred with Lead Counsel about litigation and settlement strategies and (f) provided authorization to Lead Counsel for the range to be sought in the settlement negotiations. *See* Ex. 3 (Declaration of Omar Miramontes.

34.    The relatively modest request for an award in the amount of $5,000 to compensate Lead Plaintiff in this Action for its time and service to the Settlement Class is reasonable.

*        *        *

I declare that the foregoing is true and correct under penalty of perjury of the laws of the United States of America under 28 U.S.C. § 1746.

Executed: October 7, 2024

 */s/ Michael J. Wernke*
Michael J. Wernke

12