OASRINRc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
IN RE Y-mAbs THERAPEUTICS, INC.
SECURITIES LITIGATION                    23 Civ. 431


------------------------------x

                                         New York, N.Y.
                                         October 28, 2024
                                         11:00 a.m.

Before:

               HON. ARUN SUBRAMANIAN,

                              District Judge

                    APPEARANCES

POMERANTZ LLP
     Attorneys for Lead Plaintiff in the Class
BY:  MICHAEL J. WERNKE

COOLEY LLP
     Attorneys for Defendants
BY:  SARAH TOPOL
     ARIC WU

OASRINRc

(Case called)

MR. WERNKE:  Good morning, your Honor.  Michael Wernke of Pomerantz on behalf of lead plaintiff in the class.

THE COURT:  Good morning.

MS. TOPOL:  Good morning, your Honor.  Sarah Topol with Cooley for defendants, and also with me is Aric Wu, also with Cooley, also for defendants.

THE COURT:  Good morning.

MS. TOPOL:  Good morning.

THE COURT:  Mr. Wernke, where are the young lawyers? I know you've got them because there's more than a million dollars worth of time put into this case, and so they must be somewhere.

MR. WERNKE:  They are somewhere.  Unfortunately, I was the person who was designated to come here today unfortunately. Apologies, your Honor.

THE COURT:  Okay.  All right.  Look, let's just get down to it.  Let me take a step back.  How much money is Wolf Popper getting?

MR. WERNKE:  Your Honor, Wolf Popper -- so of whatever the settlement is?

THE COURT:  Yes.

MR. WERNKE:  They are going to be getting their time.

THE COURT:  What is that time?

MR. WERNKE:  Their time is I believe $86,651.

OASRINRc

THE COURT:  You said $86,351.

MR. WERNKE:  Sorry.  $86,651.

THE COURT:  Apologies.

How much is Glancy Prongay getting?

MR. WERNKE:  I'm not aware if there's a set amount that has been negotiated at this point.

THE COURT:  Meaning, there's no agreement with Glancy?

MR. WERNKE:  I'm not aware of any formal agreement with Glancy as to a specific dollar amount.

THE COURT:  Here is the difficulty.  The local rule in this court, 23.1, requires disclosure of any agreement between counsel in terms of the fees, and it does not appear that that rule was adhered to, so maybe you can speak to that.

MR. WERNKE:  So I believe, your Honor, we disclosed in the notice and to the Court that we would be sharing the fees, that we have an agreement to share fees with these other firms.

THE COURT:  I don't believe Wolf Popper was in the long form notice.

MR. WERNKE:  I believe they were added to the long form notice, your Honor, that went out to the class.  If I'm wrong, I can check.  I don't have the full form.  I don't know if I have it here in front of me.  I need to look.  I might have it here.  Yeah, I do have it.

Yes, on the notice that went out to the class, it's on page 7 stating that:  Lead counsel intends to share a limited

amount of any attorneys' fees and awarded by the Court with Glancy Prongay & Murray LLP and Wolf Popper LLP --

THE COURT:  Okay.

MR. WERNKE:  -- in accordance with their level of contribution to the initiation/prosecution/resolution of the action.

THE COURT:  Do you have an estimate as to how much Glancy would be receiving?

MR. WERNKE:  My understanding, it's not going to be a significant amount.  We're not talking 50 percent, 40 percent or 30 percent.  My understanding it's a -- you know I wasn't personally privy to those negotiations.  My understanding is it's going to be a much smaller amount.

THE COURT:  The notice shall include a statement of the names and addresses of the applicants for such fees and the amounts respectively, and shall disclose any fee-sharing agreements with anyone.  I don't think that that was followed.

MR. WERNKE:  I apologize.

THE COURT:  And look, I approved the notice that went out to the class, and this just wasn't an issue that was identified by anyone.  It is one of the problems with this whole process because there's no adversary nature to it, and so there's no one who would point that out as a defect.  That being said, I'd like to have some understanding of the fees that Glancy would be receiving here.

OASRINRc

MR. WERNKE:  Absolutely, your Honor.  We can submit something, you know, later today.  In fact, as soon as I get back, I can talk with the individuals who dealt specifically/personally with those negotiations if your Honor would like that?

THE COURT:  I would like that.  So if you can submit a letter today as to the fees to be given to Glancy, I think that will be helpful that way the Court has some understanding of that.  I think that under these circumstances while the letter of the local rule 23.1 was not perhaps followed, I think it is important to have public disclosure as to what the agreements are, so that to the extent that anyone wants visibility into that, which I think is the purpose of the rule, it will be reflected on the docket.

MR. WERNKE:  Absolutely, your Honor.

THE COURT:  Okay.  We'll do that today.  Let me just ask one more question, which I think I know the answer to, but whoever puts in a proof of claim, the $19 million minus expenses and fees will be allocated *pro rata* to those individuals; meaning, there's no amount that is either going to into a cy pres fund or revert back to the defendants?

MR. WERNKE:  There's no reversion, your Honor. Sometimes at the end after a distribution or second distribution, you get a *de minimis* amount.  If at some point there is a *de minimis* amount that doesn't make practical sense

OASRINRc

to, again, send out to claimants and we determine that we are considering doing a cy pres, we will obviously move to get information from your Honor on how to do that, on how to handle *de minimis* funds.  And usually we're talking about $5,000 or $10,000, something like that amount, but we certainly have no intention of doing that without first coming to your Honor with that.

THE COURT:  Understood.

Ms. Topol or Mr. Wu, anything to add?

MS. TOPOL:  No, your Honor.

THE COURT:  And, Mr. Wernke, I'm correct that as of today's date, there are no late-breaking objections or requests for exclusions?

MR. WERNKE:  No, your Honor.  No objections.  No requests for exclusions.

THE COURT:  All right.  So the Court will approve the settlement.  The only question that I have is as to fees, and just so I'm totally transparent with you, I may approve the fees as have been requested.  I may deduct the amounts that would be allocated to Wolf Popper and Glancy due to the failure to provide notice to the class.

Obviously you can distribute the amounts in question from the amount that we are awarding to Pomerantz.  That's your call, but I'm trying to figure out what would be the most fair thing to do for the class, given the policies that are

OASRINRc

underlying rule 23.1.  So it's going to be either the full amount that you've requested or that amount minus the amounts that would be located to Wolf Popper and Glancy, which would provide some relief to the class.  Although, if the numbers are in the same range for Glancy as they are for Wolf Popper, it would be a small relief.  But I am just trying to be fair in terms of what rule 23.1 is trying to achieve.

MR. WERNKE:  I understand.

THE COURT:  Those are the two options.

MR. WERNKE:  I completely understand, your Honor.

THE COURT:  Okay.  So we'll wait for the notice from plaintiff, and otherwise, the settlement will be approved. Anything further, Mr. Wernke?

MR. WERNKE:  Nothing, your Honor.

THE COURT:  All right.  Great job getting this case resolved on both sides, and we'll have this wrapped up very shortly.  Thank you for coming in.  I really appreciate it.

MR. WERNKE:  Thank you, your Honor.

MS. TOPOL:  Thank you, your Honor.

THE COURT:  We're adjourned.

(Adjourned)

o0o