**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| IN RE Y-mAbs THERAPEUTICS, INC. SECURITIES LITIGATION | Civil Action No.: 1:23-cv-00431-AS |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DISTRIBUTION OF CLASS ACTION SETTLEMENT FUND**

Lead Plaintiff Omar Miramontes ("Plaintiff")[1] submits this memorandum of law in support of his Motion for Distribution of Class Action Settlement Fund ("Motion") in the above-captioned Action. If entered by the Court, the [Proposed] Order Granting Motion for Distribution of Class Action Settlement Fund ("Class Distribution Order") will, among other things: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; and (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court. The specifics of the proposed plan for distribution of the Net Settlement Amount are set forth in the accompanying Declaration of Sarah Evans Concerning the Results of the Claims Administration Process dated May 20, 2025 ("Evans Decl.").

## I.    BACKGROUND

On July 1, 2024, the Court entered the Order Preliminarily Approving Proposed Settlement ("Preliminary Approval Order") (ECF No. 59). On October 29, 2024, the Court granted final approval of the Settlement and entered the Final Judgment and Order of Dismissal with Prejudice (ECF No. 69).

The Court-appointed Claims Administrator, Strategic Claims Services, has advised Lead Counsel that it completed all analyses and accounting procedures and quality control procedures in connection with the Proof of Claim forms submitted by those persons who responded to the Notice, and has determined which of those persons are, subject to Court approval, Authorized Claimants. Evans Decl. ¶ 7. All that remains to complete the Settlement process is to distribute the Net Settlement Amount to Authorized Claimants. Thus, the Court should authorize the distribution

---

[1] All capitalized terms that are not otherwise defined herein have the seams meanings as set forth in the Stipulation of Settlement (the "Stipulation").

of the Net Settlement Fund to Authorized Claimants, as identified in Exhibits B-1 and B-2 to the Evans Decl.

## II.    DETERMINATION OF AUTHORIZED CLAIMANTS

The Court approved the content of the Notice when issuing the Preliminary Approval Order and mandated the documentation necessary to the submission of a valid claim. *See* Preliminary Approval Order at ¶ 10. All Claims were to be submitted to the Claims Administrator, online or postmarked no later than October 7, 2024. The Claims Administrator has now finalized its determination of which Claims are authorized and which are ineligible. Evans Decl. ¶¶ 7.

The Claims Administrator continued processing all claims received up to December 12, 2024. Evans Decl. ¶ 6. As a result of a robust notice program, through December 12, 2024, the Claims Administrator received 7,753 Claim Forms. *Id*. ¶¶ 6. After reviewing, analyzing, and processing all Claim Forms, the Claims Administrator has finalized its determination of which claims are authorized and which are ineligible. ¶ 7.

Attached as Exhibits B-1, B-2, D and E to the Evans Declaration are listings of all Claims submitted in connection with the Settlement:

(a)    Exhibit B-1 lists valid and timely Claims and shows each Claimant's Recognized Loss amount.  The Claims Administrator recommends payment of these Claims.

(b)    Exhibit B-2 lists Claims that are considered Late but Otherwise Eligible and shows each Claimant's Recognized Loss amount. The Claims Administrator recommends payment of these Claims.

(c)    Exhibit D lists the rejected Claims and the reasons for rejection.

(d)    Exhibit E lists the ineligible Claims.

The Claims Administrator's procedures and determinations are set forth below, and fully described in paragraphs 6-7 and Exhibit A of the Evans Declaration.

### A.      Valid and Properly Documented Claims

The Claims Administrator analyzed the 7,753 Proof of Claim forms received through December 12, 2024 and determined that 2,318 valid and properly-document claims were received. Evans Decl. ¶ 6. Of these 2,318 claims, 2,316 were timely (*i.e.*, received or postmarked no later than October 7, 2024) ("Timely Valid Claims") and 2 were received after the October 7, 2024 filing deadline but before the Claim's Administrator's imposed cut-off date of December 12, 2024 ("Late But Otherwise Eligible Claims"). *Id*. ¶ 7a. These valid claims represent Recognized Losses of $155,695,366.65. *Id.*

The Court should accept all 2,318 valid claims, including the 2,316  Timely Valid Claims and the 2 Late But Otherwise Valid Claims. The Late But Otherwise Valid Claims have not caused delay to the distribution of the Net Settlement Amount or otherwise prejudiced any Authorized Claimant, and Plaintiff believes that it would be unfair to prevent otherwise valid claimants from participating in the Net Settlement Fund solely because their claims were submitted after the October 7, 2024 deadline, but while claims were still being processed. *See In re Crazy Eddie Securities Litigation*, 906 F. Supp. 840, 845 (E.D.N.Y. 1995) (stating that the "determination of whether to allow the participation of late claimants in a class action settlement is essentially an equitable decision within the discretion of the court," and allowing late claims postmarked within one month and four days of original deadline to participate in the distribution of settlement funds); *In re Gilat Satellite Networks, Ltd.*, No. CV–02–1510 (CPS)(SMG), 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009) (including late-filed claims as part of a settlement).

The Court should also enter an Order directing that no claims received after December 12, 2024, or any responses to deficiency and/or rejection notices received after April 25, 2025, be

3

included in the distribution. To facilitate the efficient and proportional distribution of the Net Settlement Fund, there must be a final cut-off after which no other claims may be accepted. *In re Citigroup Inc. Sec. Litig.*, No. 09–Md–2070 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) ("[A]t some point in the distribution of a large class action settlement, such as this one, 'a cutoff date is essential and . . . the matter must be terminated.'"); *Hartman v. Powell*, No. 00-5356, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001) ("Drawing a line is essential to achieve certainty and finality in such a large class action.").

### B.    Deficient and Ineligible Claims

To be eligible for a payment from the proceeds of the Settlement Class Members must submit a Proof of Claim form with adequate supporting documentation. *See* ECF No. 59, Preliminary Approval Order ¶ 10. As detailed in the Preliminary Approval Order, proper documentation may consist of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation as is deemed adequate by the Claims Administrator or Lead Counsel. *Id*.

The Claims Administrator initially identified 22 inadequately documented claims. Evans Decl. ¶ 7b. The Claims Administrator mailed or emailed inadequacy notices to each of these claimants, advising them of the nature of their inadequacy and providing them an opportunity to cure. *Id*. A sample inadequacy notice is annexed as **Exhibit C** to the Evans Decl. Among these 22 deficient claims, 17 have been successfully cured and are considered valid. *Id*. The remaining 5 inadequate claimants either did not respond to the inadequacy notice or responded with inadequate documentation and were sent a rejection notice setting forth the reason for their inadequacy. *Id*. To date, none of the 5 inadequate claimants has objected to or contested this determination. *Id*. **Exhibit D** to the Evans Decl. is a list of the inadequate, rejected claimants.

In addition to the 5 claims discussed above, the Claims Administrator identified 5,430 claims which it recommends for complete rejection. Evans Decl. ¶ 7c. Included in this category are: (i) claims with no Recognized Losses; (ii) claims with stock of Y-mAbs that was purchased outside of the Settlement Class Period; (iii) claims with shares of Y-mAbs which were sold short; (iv) claims with stock of Y-mAbs that were not purchased or otherwise acquired, but were received, granted by gift, inheritance, or operation of law; (v) claims which were withdrawn by the filing entity; (vi) duplicate claims filed; and (vii) fraudulent claims filed. *Id*. **Exhibit E** to the Evans Decl. is a list of these ineligible claims. The Claims Administrator communicated with these 5,430 claimants and advised them of the determination. A sample ineligibility notice is annexed as **Exhibit F** to the Evans Decl. To date, none of these ineligible claimants has contested their determination. *Id*.

### III.    PLANNED DISTRIBUTION OF THE NET SETTLEMENT AMOUNT

Lead Counsel now seeks to distribute the Net Settlement Fund to Class Members, in accordance with the Stipulation and Plan of Allocation approved by the Court, whose 2,318 claims have been accepted as set forth in Exhibits B-1 and B-2 of the Evans Decl.

Consistent with the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Authorized Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more. Evans Decl. ¶ 9a. Based on the substantial experience of Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel proposes that all the distribution checks bear a notation "CASH

PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." Evans Decl. ¶ 9b.

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Amount to cash their distribution. If, however, after at least months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a redistribution, with the funds being used in the following fashion: (i) first, to pay any amounts mistakenly omitted from the initial disbursement; (ii) second, to pay any additional settlement administration fees, costs, and expenses, including those of Lead Counsel or the Claims Administrator as may be approved by the Court; and (iii) finally, to make a second distribution to claimants who cashed their checks from the initial distribution and who would receive at least $10.00, after payment of the estimated costs, expenses, or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible. Evans Decl. ¶9c. These redistributions shall be repeated, if economically feasible, until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance will then be distributed pursuant to a method approved by the Court. *Id*.

## IV.    RELEASE OF CLAIMS

To allow the full and final distribution of the Net Settlement Amount, the Court must bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, the Court should release and discharge all persons involved in the review, verification, calculation,

tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Amount from any and all claims arising out of such involvement and bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them under the terms of the Distribution Order. Evans Decl. ¶ 9e. *See In re Top Tankers, Inc. Sec. Litig*., Order Authorizing Distribution of Net Settlement Fund at p.4, ECF No. 123, Case No. 1:06-cv-13761-CM (S.D.N.Y Dec. 14, 2009); *In re Veeco Instruments Inc. Sec. Litig*., Order Approving Distribution of Net Settlement Fund at ¶8, ECF No. 171, Case No. 1:05-cv-10226-CM (S.D.N.Y. Sept. 8, 2009).

## V.      RECORDS RETENTION AND DESTRUCTION

The Court should order that: (i) in no less than one (1) year after the distribution of the Net Settlement Fund, the Claims Administrator may destroy the paper copies of the Proof of Claim forms and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Proof of Claim forms and all supporting documentation. Evans Decl. ¶ 9f.

## VI.     CONCLUSION

Based on the foregoing, the Court should approve and enter the [Proposed] Order Granting Motion for Distribution of Class Action Settlement Fund, submitted herewith.

Dated:  May 21, 2025                                    Respectfully submitted,

                                                       /s/  *Michael J. Wernke*
                                                       Jeremy A. Lieberman

7

Michael J. Wernke
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
        mjwernke@pomlaw.com

*Counsel for Omar Miramontes and
Lead Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Additional Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

_/s/ Michael J. Wernke_
Michael J. Wernke