**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE Y-mAbs THERAPEUTICS, INC. SECURITIES LITIGATION | Civil Action No.: 1:23-cv-00431-AS |

**DECLARATION OF SARAH EVANS CONCERNING**
**THE RESULTS OF THE CLAIMS ADMINISTRATION PROCESS**

I, Sarah Evans, declare:

1.      I am a Project Manager at Strategic Claims Services ("SCS"), a nationally recognized class action administration firm. I have over eight years of experience specializing in the administration of class action cases. SCS was established in April 1999 and has administered over five hundred and fifty (550) class action cases since its inception. I have personal knowledge of the facts set forth herein, and if called on to do so, I could and would testify competently thereto.

**UPDATE ON THE NOTIFICATION PROCESS**

2.      Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice, dated July 1, 2024 (ECF No. 59, the "Preliminary Approval Order"), SCS was appointed as the Claims Administrator to supervise and administer the notice procedure as well as the processing of claims in connection with the Settlement of the above-captioned action.[1]

3.      As noted in the Declaration of Sarah Evans Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Publication Notice; and (C) Report on Requests for Exclusion and Objections, dated October 7, 2024, and the Supplemental Declaration of Sarah Evans Concerning:

---

[1] All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation of Settlement, dated as of June 26, 2024 (ECF No. 58, the "Stipulation") or the Mailing Declarations.

(A) Mailing of the Postcard Notice; and (B) Report on Requests for Exclusion and Objections, dated October 21, 2024 (the "Mailing Declarations") (ECF Nos. 64-1 and 67), SCS mailed or emailed 2,302 letters to the Nominee Account Holders and Institutional Groups contained on SCS's master mailing list. As noted in the Mailing Declarations, 8,569 Postcard Notices were mailed to potential Settlement Class Members or nominees, and 5,827 emails with the link to the electronic Long Notice and Proof of Claim were sent to potential Settlement Class Members for whom valid email addresses were available. Since the Mailing Declarations were filed, SCS was notified by a nominee that an additional 123 emails with the link to the electronic Long Notice and Proof of Claim had been sent to potential Settlement Class Members prior to the dates of the Initial Mailing Declarations. In total, 14,519 potential Settlement Class Members were notified either by mailed Postcard Notice or emailed a direct link to the Long Notice and Proof of Claim.[2]

## UPDATE ON TOLL-FREE PHONE LINE

4.    The Mailing Declarations noted that SCS maintains a toll-free telephone number (1-866-274-4004) for Settlement Class Members to call and obtain information about the Settlement. SCS will continue to promptly respond to each telephone inquiry from Settlement Class Members through the distribution process.

## UPDATE ON SETTLEMENT WEBPAGE

5.    The Mailing Declarations also noted that on July 17, 2024, SCS established a webpage for the Settlement on SCS's website at www.strategicclaims.net/y-mabs. The webpage is accessible 24 hours a day, 7 days a week. The webpage contains information related to the

---

[2] As reported in the Mailing Declarations, SCS had received and fulfilled three requests from potential Settlement Class Members to mail them the Long Notice and Proof of Claim. SCS has not received any additional requests to mail the Long Notice and Proof of Claim since the Mailing Declarations were filed.

current status of the case, including important case dates such as the date of the Final Approval Hearing, the deadline for requesting exclusion, and the deadline for filing an objection; the online claim filing link; and downloadable copies of the following important case documents: the Long Notice and Proof of Claim, the Preliminary Approval Order, and the Stipulation and its Exhibits C, D, E, F, and G. SCS will continue to maintain and update the webpage through the rest of the administration process. To date, the Settlement webpage has received 2,225 pageviews from 633 unique users.

### STATUS OF CLAIMS PROCESSING

6.      Through December 12, 2024, 7,753 Proof of Claim forms (hereafter referred to as "claims") were submitted in connection with this Settlement.[3] SCS has carefully reviewed, analyzed, and processed all of these claims, and has responded to all claimant inquiries regarding the action, the Settlement and the procedures for filling out the Proof of Claim form. SCS has also been in close contact with Lead Counsel to review the administration process. SCS's Report of Claims Administrator is annexed hereto as **Exhibit A** and described below.

7.      The annexed Report of Claims Administrator sets forth the final status of claims submitted to SCS as follows:

a.      PROPERLY DOCUMENTED CLAIMS:   SCS  has  identified  2,318[4] properly documented valid claims. These valid claims represent Recognized Losses of $155,695,366.65.[5] These valid claims were calculated in the manner set forth in the Court-

---

[3] SCS has not processed any claims filed after December 12, 2024, or any responses to rejections received after April 25, 2025, due to extreme lateness and because their inclusion would have delayed the finalization of the administration.

[4] This number includes 2,316 timely filed valid claims and 2 late but otherwise valid claims.

[5] This amount includes Recognized Losses for timely filed, valid claims of $155,652,595.17 and Recognized Losses for late (but otherwise valid) claims of $42,771.48.

approved Plan of Allocation ("Plan of Allocation"), included in the Long Notice. **Exhibit B-1** is a spreadsheet of the 2,316 properly documented and timely submitted claims. **Exhibit B-2** is a spreadsheet of the 2 claims submitted after the Court- approved claims filing deadline, October 7, 2024, and on or before December 12, 2024.

b.    INADEQUATELY DOCUMENTED CLAIMS: SCS initially identified 22 inadequately documented claims. SCS mailed or emailed inadequacy notices to each of these claimants, advising them of the nature of their inadequacy and providing them an opportunity to cure. A sample inadequacy notice is annexed hereto as **Exhibit C**. Among these 22 deficient claims, 17 have been successfully cured and are considered valid. The remaining 5 inadequate claimants either did not respond to the inadequacy notice or responded with inadequate documentation and were sent a rejection notice setting forth the reason for their inadequacy. To date, none of the 5 inadequate claimants has objected to or contested this determination. *See* **Exhibit D** for a list of the inadequate, rejected claimants.

c.    INELIGIBLE CLAIMS: In addition to the 5 claims discussed above in paragraph 7.b., SCS has identified 5,430 claims which we recommend for complete rejection. Included in this category are: (i) claims with no Recognized Losses; (ii) claims with stock of Y-mAbs Therapeutics, Inc. ("Y-mAbs") that was purchased outside of the Settlement Class Period; (iii) claims with shares of Y-mAbs which were sold short; (iv) claims with stock of Y-mAbs that were not purchased or otherwise acquired, but were received, granted by gift, inheritance, or operation of law; (v) claims which were withdrawn by the filing entity; (vi) duplicate claims filed; and (vii) fraudulent claims filed. *See* **Exhibit E** for a list of these ineligible claims. We have communicated with these 5,430 claimants and advised them of our determination. A sample ineligibility notice is annexed

hereto as **Exhibit F**. To date, none of these ineligible claimants has contested their determination.

8. In anticipation of completing this administration, SCS respectfully requests that the Court reject as untimely any claims received after December 12, 2024, and any responses to deficiency and/or rejection notices received after April 25, 2025.

9. Should the Court concur with SCS's administrative determinations concerning the claims recommended for acceptance and rejection, SCS recommends the following:

a. Per the Plan of Allocation, each Authorized Claimant shall be paid the *pro rata* share of the Net Settlement Fund that each Authorized Claimant's Recognized Losses bears to the total of the Recognized Losses of all 2,316 Authorized Claimants and 2 late claims, if the late claims are deemed valid by the Court. If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and a distribution will not be made to that Authorized Claimant.

b. The balance of the Net Settlement Fund (less amounts to be withheld for potential tax liabilities and related fees and expenses) shall be distributed to Authorized Claimants. In order to encourage Authorized Claimants to cash their distribution checks promptly, and to avoid or reduce future expenses relating to unpaid distribution checks, all checks should bear the notation, "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." Similarly, all other checks issued in connection with subsequent distributions shall bear the same notation.

c. If any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Settlement Class Members who are entitled to participate in the distribution

of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund after at least six (6) months after the initial distribution of such funds will be used in the following fashion: (a) first, to pay any amounts mistakenly omitted from the initial disbursement; (b) second, to pay any additional settlement administration fees, costs, and expenses, including those of Lead Counsel or the Claims Administrator as may be approved by the Court; and (c) finally, to make a second distribution to claimants who cashed their checks from the initial distribution and who would receive at least $10.00, after payment of the estimated costs, expenses, or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible. These redistributions shall be repeated, if economically feasible, until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance will then be distributed pursuant to a method approved by the Court.

d.    Authorized Claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement unless good cause is shown. The funds allocated to all such stale-dated checks will be available for re-distribution to other Authorized Claimants in subsequent distributions, if such distributions are determined to be economically feasible.

e.    SCS respectfully requests the Court order that: All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members and other Claimants, whether or not they are to receive payment from the Net Settlement Fund, are

6

barred from making any further claim against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, Plaintiff's Counsel, the Claims Administrator and it's agents/employees, the Escrow Agent, or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Distribution Order.

f.      SCS also respectfully requests the Court order that: (i) in no less than one (1) year after the distribution of the Net Settlement Fund, SCS may destroy the paper copies of the Proof of Claim forms and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, SCS may destroy the electronic copies of the Proof of Claim forms and all supporting documentation. This is the customary document retention period SCS uses to prevent additional costs to the Settlement Class for storage expenses and related fees.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 20th day of May 2025, in Media, Pennsylvania.

_____
Sarah Evans